| | | |
|---|---|---|
| 1 | Q | Okay. |
| 2 | A | No. |
| 3 | Q | But maybe equal to the hood? |
| 4 | A | That's a big difference, you know, from the top of the |
| 5 | | car to the hood. |
| 6 | Q | From the top of the car to the..... |
| 7 | A | I'd say more..... |
| 8 | Q | .....hood of your Explorer? |
| 9 | A | Oh, I see what you're asking.  I was..... |
| 10 | Q | Yeah.  So about same in height? |
| 11 | A | Maybe -- maybe something like that. |
| 12 | Q | Yeah. |
| 13 | A | It was probably closer. |
| 14 | Q | So undoubtedly the headlights of the Explorer are just |
| 15 | | about eye level with anybody sitting in that car? |
| 16 | A | Yeah. |
| 17 | Q | Okay. |
| 18 | A | That's probably about right. |
| 19 | Q | What happened after you radioed in the license plate |
| 20 | | number? |
| 21 | A | After I radioed in the license plate number somebody |
| 22 | | sat up on the -- in the driver's seat and just sat up |
| 23 | | just like that, as I'm describing, very -- very |
| 24 | | fast..... |
| 25 | Q | Okay. |

R & R  COURT  REPORTERS

810 N STREET
277-0572/Fax 274-8982

1007 WEST THIRD AVENUE
272-7515

ANCHORAGE, ALASKA  99501

Exhibit  2
Page 1 of 17

54

```
 1  A     .....and grabbed the steering wheel and was looking
 2        right at me.
 3  Q     Okay.  They were looking right at you?
 4  A     (Inaudible response).
 5        COURT REPORTER:  Is that a yes?
 6  A     I'm sorry.  I nodded.  Yes.
 7  Q     We keep her for that reason.  Okay?
 8  A     Yes.
 9        COURT REPORTER:  Thank you.
10  Q     She keeps us in line.  Thank you, ma'am.
11  A     Yes.
12  Q     Okay.  Undoubtedly -- you said the person looked right
13        at you?
14  A     I wouldn't say undoubtedly.  That's the feeling I got
15        is that we made eye contact.  And I don't know what was
16        going through the person's head.
17  Q     This was a very dark night and you had very bright
18        lights on your car very close to that person?
19  A     Well, once again I don't know if I had my brights on.
20        But I did have my headlights shining in his car.
21  Q     And your headlights are bright.....
22  A     The.....
23  Q     .....by themselves?
24  A     Certainly.
25  Q     And if you would have to go out say about three or four
```

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit 2
Page 2 of 17

55

|    |   |                                                                      |
|----|---|----------------------------------------------------------------------|
| 1  |   | feet away, would that be a fair number to be away from              |
| 2  |   | that car?                                                            |
| 3  | A | A little bit farther I'd say.                                        |
| 4  | Q | Okay.  Seven or eight?                                               |
| 5  | A | Something like that.                                                 |
| 6  | Q | Give me a number that works for you.                                 |
| 7  | A | I'd say -- I'd say six feet guestimation.....                        |
| 8  | Q | Okay.                                                                |
| 9  | A | .....from the front of his car.  So add the hood to                  |
| 10 |   | that we're probably looking at 12 to 14 feet from the                |
| 11 |   | headlights to the windshield.                                        |
| 12 | Q | Okay.                                                                |
| 13 | A | Guess.                                                               |
| 14 | Q | Twelve feet.  We've got two headlights that are about                |
| 15 |   | eye level.  We've got two headlights that, as I                      |
| 16 |   | understand headlights, they focus to a center point?                 |
| 17 | A | Yes.                                                                 |
| 18 | Q | So they're both boring in on the driver.  That's the                 |
| 19 |   | center point of where your headlights are, aren't they?              |
| 20 | A | I -- I wouldn't know.  I don't know where they bore                  |
| 21 |   | into a center point.  They were lighting up the area                 |
| 22 |   | and I could see inside the car.                                      |
| 23 | Q | That person couldn't make eye contact with you through               |
| 24 |   | those bright lights, could they?                                     |
| 25 | A | That'd be speculation, sir.                                          |

R & R  COURT  REPORTERS

810 N STREET                      1007 WEST THIRD AVENUE
277-0572/Fax 274-8982             272-7515

Exhibit  2
Page  3  of  17

ANCHORAGE, ALASKA  99501

56

| | | |
|---|---|---|
| 1 | Q | Well, you tell me. How many times have you sat and |
| 2 | | looked through -- tried to look through bright lights |
| 3 | | into the hood of a -- through the windshield of a car |
| 4 | | and see someone? |
| 5 | A | Well, I've done that quite frequently. |
| 6 | Q | Okay. And you don't have any problem doing that? |
| 7 | A | It can be a problem depending on the situation. |
| 8 | | But..... |
| 9 | Q | But if you had your brights on it would make it even |
| 10 | | worse, wouldn't it? |
| 11 | A | It, once again, depends. I mean that's possible |
| 12 | | but..... |
| 13 | Q | And if you had ultra bright lights on, it'd be even |
| 14 | | harder still? |
| 15 | A | I don't know. It depends -- that would be -- that's a |
| 16 | | loosely described scenario that I just don't think has |
| 17 | | one straight answer to it. It would depend on the -- |
| 18 | | it would depend..... |
| 19 | Q | Go ahead, you can answer. |
| 20 | A | It would depend on where those lights are aimed and if |
| 21 | | there's any obstructions and, you know, the particular |
| 22 | | person. I..... |
| 23 | | (Exhibit 29 proffered) |
| 24 | Q | I'm showing you 29 -- Exhibit 29. Okay? That's the |
| 25 | | front of your canine unit? |

R & R COURT REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit  2
Page 4 of 12

| | | |
|---|---|---|
| 1 | A | Yes, sir. |
| 2 | Q | Does it have the ultra brights on it? |
| 3 | A | Yeah.  It has the -- the highway -- moose lights we call them on the..... |
| 5 | Q | Yeah. |
| 6 | A | .....just below the headlights mounted on the bumper, yes. |
| 8 | Q | Okay.  And the likelihood is if you had those particular lights you would have used them? |
| 10 | A | I wouldn't say that's the likelihood. |
| 11 | Q | You were coming into a strange scenario? |
| 12 | A | It -- like I said, I thought it was just an abandoned vehicle at the very beginning.  So..... |
| 14 | Q | Okay.  This person sits up and frightens you basically? |
| 15 | A | No, he didn't frighten me. |
| 16 | Q | Okay.  Startled you? |
| 17 | A | I was surprised there was someone in the vehicle. |
| 18 | Q | Surprised you.  And that surprise was that there was a person there? |
| 20 | A | Yes. |
| 21 | Q | Surprise was that the -- you're focusing on getting a license plate number and suddenly this movement appears? |
| 24 | A | Correct, sir. |
| 25 | Q | The surprise was that this person, probably asleep, is |

R & R  COURT  REPORTERS

810 N STREET
277-0572/Fax 274-8982

1007 WEST THIRD AVENUE
272-7515

ANCHORAGE, ALASKA  99501

Exhibit  2
Page 5 of 17

|   |   |   |
|---|---|---|
| 1 |   | awakened by all the lights and activity outside his |
| 2 |   | car? |
| 3 | A | That'd be speculation.  I don't know what he was doing. |
| 4 | Q | Well, you don't know what he was doing but certainly in |
| 5 |   | the middle of the -- he'd been there for several hours |
| 6 |   | is in the report, right? |
| 7 | A | I don't know if it was several or a couple. |
| 8 | Q | Okay. |
| 9 | A | He could have been there a long time. |
| 10 | Q | And so if he could have been there a long time he could |
| 11 |   | have been sleeping? |
| 12 | A | I don't know. |
| 13 |   | MR. FLOERCHINGER:  Object to form. |
| 14 |   | MR. OSTERMAN:  Okay.  There it goes.  We're |
| 15 |   | going to have a standing objection to form.  I've never heard |
| 16 |   | of an objection to form being made in a court room but we're |
| 17 |   | going to take the objection to form and we're going to leave it |
| 18 |   | stand.  Every question I ask from this point on is going to be |
| 19 |   | to form.  Okay? |
| 20 | Q | So you are -- you've seen people in turn outs before? |
| 21 | A | Yes, sir. |
| 22 | Q | You've stopped people in turn outs before and |
| 23 |   | investigated? |
| 24 | A | I don't know about stopping.  If somebody's in a turn |
| 25 |   | out they're probably already stopped. |

R & R COURT REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit 2
Page 6 of 17

59

| | | |
|---|---|---|
| 1 | Q | If they're -- but you've pulled up next to them? |
| 2 | A | Yeah. |
| 3 | Q | You've turned on your overhead lights? |
| 4 | A | Depends. |
| 5 | Q | You've walked up to their cars and shown headlights in? |
| 6 | A | No, that's -- that's a subjec- -- I wouldn't agree with |
| 7 | | those statements a hundred percent.  Showing headlights |
| 8 | | in, I don't understand. |
| 9 | Q | Well, you said it's subjective.  Okay.  Well, you don't |
| 10 | | pull up and put your headlights in the driver's seat of |
| 11 | | a car when you're investigating somebody in a turn out? |
| 12 | A | If that's the best position I have then that's what I |
| 13 | | have. |
| 14 | Q | Have you ever done that before at night? |
| 15 | A | Pulled in like this and approached a vehicle like that? |
| 16 | Q | Yes. |
| 17 | A | Not that I recall specifically.  But it was the best |
| 18 | | thing I had with what I had to work with. |
| 19 | Q | Okay.  You've never pulled into a turn out and |
| 20 | | investigated another suspicious vehicle besides this |
| 21 | | one? |
| 22 | A | Yes, I have. |
| 23 | Q | And the times you've investigated vehicles, have you |
| 24 | | found people asleep in their cars? |
| 25 | A | I don't know that I have.  I can't remember, sir. |

R & R   COURT   REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit  2
Page 7 of 17

| | | |
|---|---|---|
| 1 | Q | You know that people pull over into these turn outs |
| 2 | | sometimes at night and sleep because they're tired? |
| 3 | A | I do it myself, sir. |
| 4 | Q | Okay. Because they don't want to fall asleep? |
| 5 | A | Absolutely. It's safe. That's great. |
| 6 | Q | So when this person sits up startled, pull himself up |
| 7 | | and looks around, it was obvious to you they had their |
| 8 | | seat reclined? |
| 9 | A | At that point it was. |
| 10 | Q | Okay. And it was obvious to you too that whoever it |
| 11 | | was had just been startled by your appearance? |
| 12 | A | Yes. |
| 13 | Q | Okay. So what did you do next after this person sits |
| 14 | | up immediately in the vehicle? |
| 15 | A | I didn't do anything next. I wanted to -- what I |
| 16 | | wanted to do, I can tell you, I wanted to..... |
| 17 | Q | I don't know what you wanted to do. I want to know |
| 18 | | what you did. |
| 19 | A | Okay. I didn't do anything next. I watched the |
| 20 | | person's activities for a couple of seconds. |
| 21 | Q | Okay. Then you exited your vehicle? |
| 22 | A | No. |
| 23 | Q | What'd you do then? |
| 24 | A | Then I still watched the person's activities. I guess |
| 25 | | probably to walk you through it I'll have to describe |

R & R   COURT   REPORTERS

810 N STREET                   1007 WEST THIRD AVENUE
277-0572/Fax 274-8982          272-7515

ANCHORAGE, ALASKA 99501

Exhibit 2
Page 8 of 17

61

|  |  |  |
|---|---|---|
| 1 |  | what the activities -- would you like me to do that? |
| 2 | Q | Please do. |
| 3 | A | The person popped up which was surprising. I believe I |
| 4 |  | still held the radio mike in my hand. I was waiting |
| 5 |  | for someone else to get off the radio so I could tell |
| 6 |  | them that there is indeed a person in the vehicle. |
| 7 |  | Then the person in the vehicle started steering his |
| 8 |  | vehicle to go around me. |
| 9 | Q | Okay. Still had -- to your knowledge they had not |
| 10 |  | moved to pull their seat up from the reclining |
| 11 |  | position? |
| 12 | A | I don't know. And in retrospect I know a couple |
| 13 |  | moments ago you asked if I knew that the seat was down |
| 14 |  | at that point. I have to say, in just brief |
| 15 |  | reflection, that I -- I didn't know what the deal was |
| 16 |  | with the seat. |
| 17 | Q | Okay. |
| 18 | A | I really didn't. I -- you know, the person just popped |
| 19 |  | up very quickly. And that's all I was thinking about. |
| 20 |  | I wasn't thinking about their seat. |
| 21 | Q | So they began turning their wheel to leave? |
| 22 | A | Right. To my -- towards my driver's side, that's |
| 23 |  | correct. |
| 24 | Q | Had you identified yourself as a police officer? |
| 25 | A | That's what I did next. I turned on my overhead |

R & R   C O U R T   R E P O R T E R S

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit 2
Page 9 of 17

| | | |
|---|---|---|
| 1 | | lights. |
| 2 | Q | Okay.  If you had your ultra brights on that we saw in |
| 3 | | that photograph, would any person have been able to see |
| 4 | | beyond those ultra brights to see your overhead? |
| 5 | A | That's speculation.  I don't know.  I don't know where |
| 6 | | those brights would have been shining if indeed they |
| 7 | | were on.  And I don't know that they were on.  I just |
| 8 | | don't know. |
| 9 | Q | Okay. |
| 10 | A | I'm trying to recall the best I can.  I just don't |
| 11 | | know, sir.  I'm sorry. |
| 12 | Q | Do you -- you turned on your overheads.  Was there a |
| 13 | | particular reason why you turned your overheads on? |
| 14 | A | Yes.  Because he was trying to be leave. |
| 15 | Q | And why wasn't he allowed to leave? |
| 16 | A | Because we were investigating a suspicious vehicle. |
| 17 | Q | Now, you then did what? |
| 18 | A | After I turned on my headlights? |
| 19 | Q | Yes. |
| 20 | | MR. FLOERCHINGER:  Your headlights, you said? |
| 21 | Q | Your overheads. |
| 22 | A | My overhead flashing red and blue.  Thank you.  I |
| 23 | | waited for him to stop for a moment and he didn't. |
| 24 | Q | Okay.  Then what? |
| 25 | A | So then I took my car and I put it back into drive and |

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit  2
Page 10 of 17

| | | |
|---|---|---|
| 1 | | I moved forward about six inches to try to -- to try to |
| 2 | | keep him from leaving.  To try, you know, to stop him |
| 3 | | from leaving the area because obviously he was taking |
| 4 | | off and it was obvious I was a police officer. |
| 5 | Q | Okay.  So you're going to stop him because he'd been |
| 6 | | reported as a suspicious vehicle? |
| 7 | A | Yes, sir. |
| 8 | Q | Just nothing else would indicate that his conduct |
| 9 | | required police intervention? |
| 10 | A | No.  I felt obligated to contact him based on the |
| 11 | | complaint. |
| 12 | Q | Okay.  You say he then moved -- tried to move around |
| 13 | | you? |
| 14 | A | Yes, sir. |
| 15 | Q | What did you do? |
| 16 | A | That's when I moved my car about six inches closer. |
| 17 | | I'm guessing.  Then he stopped his movement and cranked |
| 18 | | the wheel even harder.  At that point I realized that |
| 19 | | I'm not going to try to get closer because he may hit |
| 20 | | my vehicle.  And at that time he -- I can indicate by |
| 21 | | the drawing..... |
| 22 | Q | I'm going to stop you right here for a second. |
| 23 | A | Certainly. |
| 24 | Q | Where is Trooper Whittom? |
| 25 | A | I don't know, sir. |

R & R COURT REPORTERS

810 N STREET
277-0572/Fax 274-8982

1007 WEST THIRD AVENUE
272-7515

ANCHORAGE, ALASKA  99501

Exhibit 2
Page 11 of 17

| | | |
|---|---|---|
| 1 | Q | Okay.  He has not reported in yet at this scene? |
| 2 | A | Not to my recollection, sir.  I haven't seen him yet, |
| 3 | | no. |
| 4 | Q | Okay. |
| 5 | A | I don't know. |
| 6 | Q | How long have you now been at this scene? |
| 7 | A | I don't know moment. |
| 8 | Q | You were there and the only one that can tell me how |
| 9 | | long you had been there..... |
| 10 | A | That's what I'm saying.  Moments.  I had just got |
| 11 | | there. |
| 12 | Q | So we're talking seconds? |
| 13 | A | I -- I don't know.  Under a minute, I'd say certainly. |
| 14 | Q | Okay.  So absolutely under a minute. |
| 15 | A | I -- I feel.  Absolutely. |
| 16 | Q | You report the license plate number, somebody moves in |
| 17 | | the vehicle, you -- you watch them for a moment or two. |
| 18 | | When we're talking a moment or two, we're talking |
| 19 | | seconds. |
| 20 | A | Right. |
| 21 | Q | Okay?  They move their -- try to move their vehicle and |
| 22 | | you engage your lights and we're under a minute? |
| 23 | A | That'd be a pretty good guess. |
| 24 | Q | Okay.  You said you suddenly realized you're not going |
| 25 | | to play this game of moving around and jockeying around |

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit 2
Page 12 of 17

```
 1            trying to block him.  So what'd you do?
 2    A       I didn't -- yeah, I didn't consider it a game.  I just
 3            didn't want him to hit my car and I didn't want to get
 4            any closer to him.
 5    Q       Okay.  Why didn't you want him to hit your car?
 6    A       I don't want anyone to damage my car.
 7    Q       Okay.  Why not?
 8    A       You know, nobody likes to get their car damaged whether
 9            it's their personal car or their.....
10    Q       When Police cars get damaged it requires a lot of
11            paperwork, doesn't it?
12    A       Well, yeah.  But I mean, you know, nobody wants to get
13            in a collision.  It's just.....
14    Q       Okay.
15    A       .....it's just driving.
16    Q       But nobody wants to have the side of their vehicle
17            particularly damaged in a scenario where you can use
18            your bumpers and push bumpers, right?
19    A       I think I see what you're saying.  That the front of
20            the vehicle is less vulnerable than the side?
21    Q       Yes.
22    A       Well, I'd say that's probably true.  I don't know that
23            that was on my mind at the time.
24    Q       I want to go back to the police academy for a minute.
25            Were you taught anything about vehicle driving and.....
```

66

| | | |
|---|---|---|
| 1 | A | Emergency vehicle operations? |
| 2 | Q | Yes. |
| 3 | A | Um-hum.  (Affirmative) |
| 4 | Q | And in the emergency vehicle operations were you taught |
| 5 | | about ramming? |
| 6 | A | Yeah.  We don't ram. |
| 7 | Q | Okay.  But it is a technique that was taught? |
| 8 | A | No. |
| 9 | Q | No? |
| 10 | A | No, pit maneuvers in the Alaska State Troopers. |
| 11 | Q | Okay. |
| 12 | A | That would be exigent circumstances.  We never |
| 13 | | practiced or trained on anything like that. |
| 14 | | (Exhibit 19 proffered) |
| 15 | Q | I'm showing you Exhibit 19.  That's the front of your |
| 16 | | canine unit, isn't it? |
| 17 | A | It appears to be, sir. |
| 18 | Q | Okay.  And it has two very large front bumpers up |
| 19 | | there? |
| 20 | A | The -- are you talking about the push bumpers? |
| 21 | Q | Yes. |
| 22 | A | Yeah. |
| 23 | Q | And those are designed for the protection of the |
| 24 | | vehicle? |
| 25 | A | No.  They're more designed to push people off the |

R & R  COURT  REPORTERS

810 N STREET                1007 WEST THIRD AVENUE
277-0572/Fax 274-8982       272-7515

ANCHORAGE, ALASKA  99501

Exhibit  2
Page  14 of 17

|    |   |                                                                          |
|----|---|--------------------------------------------------------------------------|
| 1  |   | roadway. That's why the little rubber strip is on                        |
| 2  |   | there, to help people.                                                   |
| 3  | Q | Okay.                                                                    |
| 4  | A | They really don't provide an enormous amount of                          |
| 5  |   | protection. All it is is flat bar of soft steel. They                    |
| 6  |   | really don't provide a lot of protection.                                |
| 7  | Q | Okay. But if you were going to block this particular                     |
| 8  |   | vehicle in, you could easily have done it by engaging                    |
| 9  |   | your vehicle with this vehicle?                                          |
| 10 | A | I don't know. He still -- he still could have damaged                    |
| 11 |   | it.                                                                      |
| 12 | Q | Okay.                                                                    |
| 13 | A | That's why.....                                                          |
| 14 | Q | He could have damaged it but you would have stopped it,                  |
| 15 |   | wouldn't you?                                                            |
| 16 | A | Yeah. But I -- I wasn't prepared to do that at that                      |
| 17 |   | point.                                                                   |
| 18 | Q | Okay. In less than a minute you engaged your                             |
| 19 |   | overheads, he's cranking his wheel. What do you do?                      |
| 20 | A | I'm sorry. I ran out of water.                                           |
| 21 | Q | Fine. Can we take a break for a second because I need                    |
| 22 |   | to go to the men's room.                                                 |
| 23 |   | (Off record)                                                             |
| 24 |   | (On record)                                                              |
| 25 | Q | The last question I asked was we're less than 60                         |

R & R COURT REPORTERS

810 N STREET
277-0572/Fax 274-8982

1007 WEST THIRD AVENUE
272-7515

ANCHORAGE, ALASKA  99501

Exhibit 2
Page 15 of 17

```
 1              seconds into this particular call.
 2    A         I understand.
 3    Q         You've turned on your -- or engaged your overheads.
 4              The person has sat up causing you to be surprised.
 5              What do you do next?
 6    A         An interesting question.  All those things having
 7              happened, not necessarily in that order, once again I
 8              watched the suspect as he continues his activities.
 9    Q         How long?
10    A         The next five seconds before I do anything.
11    Q         And in that five seconds what did he -- he kept turning
12              the wheel trying to escape, that's the thing that
13              you're watching?
14    A         Correct, sir.
15    Q         What did you do then?
16    A         He successfully turned around my vehicle without
17              colliding.....
18    Q         Um-hum.
19    A         .....which I was glad of.  And as he drove by my
20              vehicle I looked out my window, we made eye contact and
21              I pointed and said stop the vehicle.  Or stop,
22              something like that.
23    Q         Was your window down?
24    A         No, it wasn't.
25    Q         So your window was not down.  Was his window down?
```

R & R   C O U R T   R E P O R T E R S

810 N STREET                  1007 WEST THIRD AVENUE
277-0572/Fax 274-8982         272-7515

ANCHORAGE, ALASKA  99501

Exhibit 2
Page 16 of 17

```
 1   A      I don't know.
 2   Q      Okay.  So you don't know whether he even heard you?
 3   A      No.  I made a motion.
 4   Q      Okay.  What else did you do?
 5   A      Then I got out.
 6   Q      Did his vehicle stop?
 7   A      No, it didn't.
 8   Q      Okay.  Did you have to catch it?
 9   A      I wouldn't say I ever caught it.  I kept up with it.
10   Q      Okay.
11   A      He wasn't going very fast.
12   Q      So he's snail pacing then, I guess you'd say?
13   A      Yeah.  I'd say I was probably at a slow trot.  Just a
14          little faster than a walk.
15   Q      Okay.  Do you drive a stick shift?
16   A      My patrol car is not a stick shift.
17   Q      I understand that.  Do you drive a stick shift?
18   A      I do.
19   Q      And how long -- how much experience have you had with
20          this stick shift?
21   A      Quite a bit.  It's what I prefer.
22   Q      And was this vehicle a stick shift?
23   A      I -- I didn't know at that time.  I believe -- believe
24          it was now.
25   Q      Okay.  And to your understanding then basically he let
```

R & R   COURT   REPORTERS

810 N STREET                1007 WEST THIRD AVENUE
277-0572/Fax 274-8982       272-7515

ANCHORAGE, ALASKA  99501

Exhibit 2
Page 17 of 17