137

| | | |
|---|---|---|
| 1 | A | We can -- you know, a couple questions is fine, |
| 2 | | but..... |
| 3 | | MR. FLOERCHINGER: Well, we can take a break. |
| 4 | | (Off record) |
| 5 | | (On record) |
| 6 | Q | Now, you don't remember Trooper Whittom moving his car |
| 7 | | in any way? |
| 8 | A | No, sir. I wasn't watching that close. I remember |
| 9 | | when he was driving into the scene. That's about it. |
| 10 | Q | Okay. You don't remember telling Investigator Gilmore |
| 11 | | that -- and page three, Exhibit 2, and it'll be five |
| 12 | | lines from the bottom. |
| 13 | A | Okay. |
| 14 | Q | Okay? I'll give you..... |
| 15 | A | Okay. |
| 16 | Q | .....the best copy. |
| 17 | A | Thanks. |
| 18 | Q | And if you go up to um..... |
| 19 | A | There's a lot of ums. |
| 20 | Q | Yeah. We'll do the um word, yeah. |
| 21 | A | Okay. |
| 22 | Q | Okay? Go ahead and read that to yourself..... |
| 23 | A | Page two? |
| 24 | Q | .....Exhibit 2, page three, five lines from the bottom. |
| 25 | A | Yes. I -- I recall saying that, sir. |

R & R  COURT  REPORTERS
810 N STREET                1007 WEST THIRD AVENUE
277-0572/Fax 274-8982       272-7515

ANCHORAGE, ALASKA 99501

Exhibit 4
Page 1 of 20

138

```
 1  Q      Okay.
 2  A      That's accurate.
 3  Q      And so Trooper Whittom is moving his vehicle to try to
 4         block this other guy is what you're telling Trooper
 5         Gilmore?
 6  A      It appears that way, sir.
 7  Q      In fact, you say he's going tit for tat?
 8  A      Um-hum.
 9  Q      So he's moving his car up and he's moving his car back
10         in an effort to blockade this guy in?
11  A      That's what I recall.
12  Q      Okay.  And you felt that he was unsuccessful when you
13         pulled the trigger and killed Mr. Porter?
14  A      Oh, no, sir.  That's way out of context.
15  Q      Well, hold on a second now.  We talked about this
16         Exhibit 1 and in Exhibit 1 we've talked about the time
17         that all of this is going on, right?
18  A      Yeah.  We talked about time.
19  Q      Okay.  And in Exhibit 1 we know that within three
20         minutes of you turning on that tape recorder the gun is
21         being fired?
22  A      It -- that's speculation.  Once again we haven't timed
23         anything.  I would -- I'm not going to marry down to
24         any seconds or minutes here.
25  Q      So you think it was more than three minutes?
```

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA 99501

Exhibit 4
Page 2 of 20

| | | |
|---|---|---|
| 1 | A | I don't -- I don't think anything about the time. When |
| 2 | | -- whatever the time was..... |
| 3 | Q | You were there, sir. Do you think it was more than |
| 4 | | four minutes? |
| 5 | A | Once again, sir, I can't answer the question because I |
| 6 | | haven't timed the tape myself. |
| 7 | Q | Was it as much as five minutes? |
| 8 | | MR. FLOERCHINGER: Object, foundation. |
| 9 | A | That -- any time frame based on what I recall from the |
| 10 | | incident would be absolute pure speculation. I |
| 11 | | wouldn't know how long it took. |
| 12 | Q | So..... |
| 13 | A | Here -- here you are, sir. |
| 14 | Q | .....we agreed that by the time that you turned on your |
| 15 | | tape recorder you had approximately one minute? |
| 16 | A | That's a wild guestimation to my best ability. I'm |
| 17 | | trying -- and I'm not trying to be difficult. I just |
| 18 | | -- it feel -- it feels like you're trying to pin me |
| 19 | | down on a time and I wasn't watching my watch. I |
| 20 | | wasn't timing this. |
| 21 | Q | I'm asking you for the best estimate you've got on |
| 22 | | time..... |
| 23 | A | Um-hum. |
| 24 | Q | .....because you were the one there. |
| 25 | A | Okay. |

R & R COURT REPORTERS

810 N STREET             1007 WEST THIRD AVENUE
277-0572/Fax 274-8982    272-7515

ANCHORAGE, ALASKA  99501

Exhibit 4
Page 3 of 20

| | | |
|---|---|---|
| 1 | Q | And it's my understanding that this entire incident |
| 2 | | happened in substantially less than five minutes? |
| 3 | A | If you say so.  I have no reason to disbelieve you. |
| 4 | Q | Okay.  And let's face it.  Between the time you -- you |
| 5 | | hit him with pepper spray and the time that you fired |
| 6 | | your pistol was a matter of merely seconds, wasn't it? |
| 7 | A | It was certainly under a minute, yeah.  It was..... |
| 8 | Q | Okay.  Well, in fact to say it was under 10 seconds |
| 9 | | might be an exaggeration? |
| 10 | A | I don't know. |
| 11 | Q | Okay.  So if Trooper Whittom is, as you say here, that |
| 12 | | Trooper Whittom attempted to get him to stop by going |
| 13 | | tit for tat with him whichever way he would steer, he |
| 14 | | was kind of trying to steer around Trooper Whittom |
| 15 | | while I was giving him commands and coming up.  Now |
| 16 | | what did you mean by coming up? |
| 17 | A | I don't know.  Coming up along side him, walking next |
| 18 | | to him, I guess. |
| 19 | Q | Okay.  Trooper Whittom's trying to get him to stop and |
| 20 | | they finally, you know, came to a halt and Whittom had |
| 21 | | stopped.  Now I don't know if he turned his wheels or |
| 22 | | what but out of my peripheral vision I saw Trooper |
| 23 | | Whittom and he was behind the open door of his patrol |
| 24 | | car. |
| 25 | A | Yes, sir. |

R & R  COURT  REPORTERS

810 N STREET                1007 WEST THIRD AVENUE
277-0572/Fax 274-8982       272-7515

ANCHORAGE, ALASKA  99501

Exhibit 4
Page 4 of 20

141

| | | |
|---|---|---|
| 1 | Q | So you're seeing Trooper Whittom out of the peripheral |
| 2 | | vision of your eye sight? |
| 3 | A | Peripheral vision of my eye sight when I'm looking at |
| 4 | | the suspect, sir. |
| 5 | Q | The suspect is now stopped? |
| 6 | A | Yes, sir. |
| 7 | Q | Now, you said I knew Trooper Whittom was directly in |
| 8 | | the vehicle's path of travel. |
| 9 | A | Yes, sir. |
| 10 | Q | Have you looked at the reports depicting the line of |
| 11 | | travel of this vehicle? |
| 12 | A | No, sir.  That didn't mean anything to me.  At the time |
| 13 | | there was no such report. |
| 14 | Q | If I were to tell you that the vehicle made a hard left |
| 15 | | turn in the last 15 feet of its travel..... |
| 16 | A | What vehicle? |
| 17 | Q | .....when you fired that vehicle -- when you fired your |
| 18 | | gun? |
| 19 | A | No, that's absolutely inaccurate. |
| 20 | Q | It is? |
| 21 | A | It's inaccurate. |
| 22 | Q | That vehicle never made a turn like that to the left? |
| 23 | A | He -- he was turning left when he pulled around my |
| 24 | | vehicle but not during the incident. |
| 25 | Q | He pulled -- he pulled to the left to get around your |

| | | |
|---|---|---|
| 1 | | vehicle? |
| 2 | A | If you want to look at it from an aerial view and you |
| 3 | | put my car here, I'm putting my right hand down on the |
| 4 | | table, and I'm putting my left hand in front of my |
| 5 | | right hand depicting the suspect's vehicle, that |
| 6 | | vehicle turned around my vehicle, driver's side to the |
| 7 | | right..... |
| 8 | Q | To the right to get around you? |
| 9 | A | .....driver's side to driver's side, then it made that |
| 10 | | slow left-hand curve towards Trooper Whittom. But |
| 11 | | that's the only left-hand turn ever I observed and it |
| 12 | | was very gradual. |
| 13 | Q | So if we look here and that's your brass where you |
| 14 | | fired..... |
| 15 | A | If those X marks are my brass. |
| 16 | Q | Okay. See that orange mark right there? |
| 17 | A | I see it. |
| 18 | Q | Okay. That's the line of travel of the rear wheel of |
| 19 | | this Mazda? |
| 20 | A | That's speculation. I wouldn't say that it is. |
| 21 | Q | You wouldn't say that? |
| 22 | A | No, sir. |
| 23 | Q | I didn't put those orange marks there. |
| 24 | A | I didn't either. I don't know what they are. |
| 25 | Q | Okay. So if those orange marks were put there by your |

```
 1              investigative team of state troopers to depict the
 2              travel of this vehicle.....
 3    A         If they were.  I don't know what they depict.
 4    Q         .....then this car, according to those orange marks, is
 5              not going in a straight line, is it?
 6    A         I don't know what the orange marks mean, sir.
 7    Q         And you only had, you said, approximately the length of
 8              -- one car length to determine whether or not you were
 9              going to shoot because that's the length of travel
10              between Mr. Porter's car and Trooper Whittom?
11    A         Yes, sir.
12    Q         Basically the length of his front bumper to his back
13              bumper you decided to pull the trigger?
14    A         I don't know if that's the measurement.
15    Q         And after Trooper Whittom was going tit for tat?
16    A         No, sir.  That's an different circumstance.  The stop
17              had taken place between that tit for tat movement.
18    Q         The stop had taken place -- if we were to look at
19              Exhibit Number 1, I'd like for you to tell me where
20              that stop occurred?
21    A         I don't know, sir, because this is nothing but an audio
22              and the stop was visually recorded, not audio.  And
23              that's just -- that's just what I saw.
24    Q         Okay.
25    A         This is only a representation of sounds.  It has -- you
```

```
 1            know, the other --.....
 2   Q        So if you saw.....
 3   A        .....the other four senses are not involved here.
 4   Q        If you saw something and said something, you would have
 5            a recollection of either of those two events together?
 6   A        I don't know exactly.  I wouldn't pin it down to a
 7            certain line.
 8   Q        Okay.
 9   A        Would you like me to try to find in here where I think
10            the car stopped?
11   Q        I would.
12   A        Okay.  It looks like he might already be stopped at the
13            very beginning, but I'm speculating.  Because I'm
14            asking him to get out of the car.  That's what I'm
15            basing my speculation on.
16   Q        When you pepper sprayed him you said he was stopped?
17   A        When I pepper sprayed him he was stopped.  Yes, sir.
18   Q        Okay.  So we know he was stopped at the time you pepper
19            sprayed him and we know that when you pulled the
20            trigger he was moving again?
21   A        Yes, sir.
22   Q        So we have the period of time of a few seconds and
23            you're yelling at him to get out of the car?
24   A        I -- I don't know how many seconds, sir.
25   Q        And you don't know how long it took you to activate
```

R & R COURT REPORTERS

810 N STREET                  1007 WEST THIRD AVENUE
277-0572/Fax 274-8982         272-7515

ANCHORAGE, ALASKA  99501

Exhibit 4
Page 8 of 20

```
 1            your recorder?
 2    A       No, sir.  It was, you know, right when I started saying
 3            get out of the car.
 4    Q       And Trooper Whittom is moving tit for tat with him as
 5            he moves?
 6    A       Before he stops, correct.  That's what I -- that's what
 7            I remember.
 8    Q       And when he stops -- now it's my understanding there's
 9            approximately 70 to 80 feet between your location of
10            your vehicle and this particular scene.  Is that a fair
11            statement?
12    A       I don't know.  I thought it was further than that.  I
13            -- I don't know.
14    Q       You thought it was further than that?
15    A       Um-hum.  ( Affirmative)
16    Q       So when this tit for tat thing is going on, it's going
17            on for a while then?
18    A       I -- I wouldn't call it a while.  Once again it's hard
19            to -- it's hard to recall and depict exact moments in
20            time in situations like this.  There was a lot of
21            information.
22    Q       Were you walking to keep up with the vehicle?
23    A       I think it was more of a fast walk, like a trot.
24    Q       Okay.
25    A       It wasn't a run.
```

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit 4
Page 9 of 20

146

| | | |
|---|---|---|
| 1 | Q | So it wasn't three miles an hour? |
| 2 | A | I don't know.  I don't know how fast I even walked. |
| 3 | Q | Okay. |
| 4 | A | I never recorded how fast I walked. |
| 5 | Q | But it certainly wasn't the run you do for a PE test? |
| 6 | A | No, sir.  It was substantially slower than that prior |
| 7 | | to him stopping initially. |
| 8 | Q | You don't recall telling Investigator Gilmore I stepped |
| 9 | | back from the investigation and waited for Super Risers |
| 10 | | and everyone to show up.  I did a short dictation of my |
| 11 | | recollection of the incident on the end of my scene |
| 12 | | tape.  I turned that tape off.  At no time did I review |
| 13 | | it or remove it from my player, or rewind or otherwise |
| 14 | | touch it? |
| 15 | A | No, I didn't -- I said that. |
| 16 | Q | So you did in fact record your recollections of the |
| 17 | | event before McDonald arrived? |
| 18 | A | Yes.  At which time I did a separate tape. |
| 19 | Q | Okay. |
| 20 | A | So I guess I did it twice. |
| 21 | Q | So my question is, as I'm looking at that tape..... |
| 22 | A | I don't have it. |
| 23 | Q | .....Exhibit Number 1..... |
| 24 | A | Is it in here? |
| 25 | Q | Well, it's your tape recorder. |

R & R COURT REPORTERS

810 N STREET               1007 WEST THIRD AVENUE
277-0572/Fax 274-8982      272-7515

ANCHORAGE, ALASKA  99501

Exhibit 4
Page 10 of 20

```
 1  A        This?
 2  Q        Okay?  As I look at the end of Number 1.....
 3  A        Um-hum.
 4  Q        .....where is your recollection recorded here?
 5  A        It's not on here.  Maybe it's on another one.
 6  Q        Okay.  It'd all be on the same tape, you said?
 7  A        I -- I think so.  That's the best of my recollection.
 8  Q        Okay.
 9  A        No, wait.  Let me read this real quick, please.  Oh,
10           yeah, here it is right here, sir.  Right below radio
11           traffic in background?
12  Q        Um-hum.
13  A        And if you read that paragraph it's -- I was dictating
14           while I was doing the scene.  I said this covered him,
15           he's still moving.  I think that's just a reaction,
16           however, etcetera, etcetera.  And then a little bit
17           later down I say okay, period, time is 0216, and then I
18           start reciting suspect isn't wearing any pants, no
19           vehicles have been moved since the point of impact when
20           Trooper Whittom's vehicle was struck. Trooper Whittom
21           was on the other side of this vehicle, etcetera,
22           etcetera, etcetera.  So I was kind of doing it while I
23           was doing the investigation.  I guess it's kind of
24           buried in that.  But then I did do a separate tape
25           later on.
```

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit 4
Page 11 of 20

| | | |
|---|---|---|
| 1 | Q | Okay.  And your -- so we've got you have no dispute |
| 2 | | with the statements that you made to Trooper -- I'm |
| 3 | | sorry, Investigator Gilmore? |
| 4 | A | No, sir.  That was my best recollection at the time. |
| 5 | Q | You had a later discussion on the 5th at 2:00 o'clock |
| 6 | | in the afternoon with Investigators McPherren and |
| 7 | | Hanson? |
| 8 | A | Sounds about right. |
| 9 | Q | And that was -- you said you believed that that |
| 10 | | occurred before you had lunch? |
| 11 | A | Yes. |
| 12 | Q | That was at 2:00 o'clock in the afternoon? |
| 13 | A | That sounds about right. |
| 14 | Q | And in that particular statement were you the OIC of |
| 15 | | the night? |
| 16 | A | You know, I remember seeing that in the report but I |
| 17 | | know I never got paid for OIC.  So I don't think I |
| 18 | | officially ever was. |
| 19 | Q | Kind of got drafted into it? |
| 20 | A | Yeah, I -- I guess so.  I think how it usually works is |
| 21 | | the person that's been on the longest, or that's on |
| 22 | | shift at that time kind of takes OIC duties.  But I |
| 23 | | never considered myself OIC.  And like I said, I |
| 24 | | certainly never got paid for it.  So..... |
| 25 | Q | Well, now you decided to go on this call that was |

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982            272-7515

ANCHORAGE, ALASKA  99501

Exhibit  4
Page 12 of 20

| | | |
|---|---|---|
| 1 | | actually directed to Trooper Whittom? |
| 2 | A | Yes, sir. |
| 3 | Q | Is it normal policy for two troopers to attend the same |
| 4 | | call? |
| 5 | A | Whenever possible.  Yes, sir.  That's..... |
| 6 | Q | Okay. |
| 7 | A | .....officer safety. |
| 8 | Q | So why don't we have -- do you know why they don't have |
| 9 | | two troopers riding in the same car?  Wouldn't that cut |
| 10 | | down on gases -- gas..... |
| 11 | A | I wish. |
| 12 | Q | .....and expenses? |
| 13 | A | That would be awesome. |
| 14 | Q | Okay. |
| 15 | A | That would be awesome. |
| 16 | Q | You remember telling the two troopers, the |
| 17 | | investigative team, that when Osborn (sic) was moving |
| 18 | | he wasn't moving very fast initially, when he moved |
| 19 | | around your vehicle? |
| 20 | A | Yes, I remember something like that. |
| 21 | Q | Okay. |
| 22 | A | Before he stopped. |
| 23 | Q | Now, do you recall when Whittom arrived? |
| 24 | A | Not exactly. |
| 25 | | (Exhibit 4 proffered) |

R & R  COURT  REPORTERS
810 N STREET                1007 WEST THIRD AVENUE
277-0572/Fax 274-8982       272-7515
ANCHORAGE, ALASKA  99501

Exhibit 4
Page 13 of 20

150

| | | |
|---|---|---|
| 1 | Q | I'll show you Exhibit 4, page 14 of the halfway mark. |
| 2 | A | Okay. |
| 3 | Q | Okay? Start there. That one paragraph. It's a fairly |
| 4 | | long paragraph. Let me know when you're done. |
| 5 | A | This one right here, sir? |
| 6 | Q | Yes. |
| 7 | A | You want me to read the whole paragraph? |
| 8 | Q | To yourself, yes. |
| 9 | A | Okay. I'm done reading that paragraph, sir. |
| 10 | Q | Does that refresh your recollection? |
| 11 | A | Not really. I mean it -- this is almost four years ago |
| 12 | | and it sounds right. But the memory is not as fresh as |
| 13 | | it used to be. |
| 14 | Q | Okay. So you believe you made that statement? |
| 15 | A | Yes. |
| 16 | Q | And your statement is that you saw Whittom entering the |
| 17 | | area. Do you remember when he entered the area in |
| 18 | | relationship to the events? |
| 19 | A | No, sir. |
| 20 | Q | Well, don't you talk about the events right there? |
| 21 | A | Yeah. But it doesn't say when in here anywhere. |
| 22 | Q | So -- may I? |
| 23 | A | Yes, sir. |
| 24 | Q | Okay. So it doesn't say when. So let's talk about it |
| 25 | | here for a second. At this time I recall, out of my |

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA  99501

Exhibit  4
Page 14 of 20

151

| | | |
|---|---|---|
| 1 | | peripheral vision, seeing Trooper Whittom coming up in |
| 2 | | the same area I pulled in. |
| 3 | A | Yeah. |
| 4 | Q | Now you say at this time..... |
| 5 | A | Yes, sir. |
| 6 | Q | .....I stayed -- you stayed right with the vehicle |
| 7 | | ordering him to stop? |
| 8 | A | Yes. |
| 9 | Q | So while you're following the vehicle..... |
| 10 | A | Yes, sir. |
| 11 | Q | .....you see Whittom arrive for the first time? |
| 12 | A | Yes, sir. |
| 13 | Q | Now you say also that you kept giving orders to him and |
| 14 | | you remember Trooper Whittom's overheard lights being |
| 15 | | activated. |
| 16 | A | Yes. |
| 17 | Q | And you remember the headlights illuminating your area |
| 18 | | and illuminating his car? |
| 19 | A | Yes, sir. |
| 20 | Q | Now you say he drove towards Trooper Whittom? |
| 21 | A | Yes, sir. |
| 22 | Q | Whittom wasn't lining.  What does that mean? |
| 23 | A | Let me find that.  Maybe I was stuttering or something. |
| 24 | Q | You're about six lines down from the top, that |
| 25 | | paragraph. |

R & R COURT REPORTERS

810 N STREET                1007 WEST THIRD AVENUE
277-0572/Fax 274-8982       272-7515

ANCHORAGE, ALASKA 99501

Exhibit 4
Page 15 of 20

| | | |
|---|---|---|
| 1 | A | I'm sorry, I've just been listening to you. I wasn't |
| 2 | | actually reading along with you. |
| 3 | Q | Okay. |
| 4 | A | Look, now I remember he drove towards Trooper Whittom. |
| 5 | | He wasn't lining. Yeah, I don't know what that means. |
| 6 | Q | Okay. He's blocking the intersection but he was kind |
| 7 | | of in the entry way. |
| 8 | A | Okay. |
| 9 | Q | The individual would turn in one direction and Whittom |
| 10 | | would turn that way. |
| 11 | A | Okay. |
| 12 | Q | He would turn back the other way and Whittom would turn |
| 13 | | back the other way. |
| 14 | A | Okay. |
| 15 | Q | Now, I've got to tell you that we've -- I've looked at |
| 16 | | the markers for the tread marks leaving your |
| 17 | | vehicle..... |
| 18 | A | Okay. |
| 19 | Q | .....where the vehicle was initially stopped by you to |
| 20 | | the time it strikes this particular vehicle and you're |
| 21 | | describing this turning sensation where this vehicle is |
| 22 | | moving? |
| 23 | A | Yeah. I don't recall any wide turning like sweeping |
| 24 | | back and forth. It was more of a gentle meandering, |
| 25 | | but yeah, that was my perception of it. Yeah. |

R & R COURT REPORTERS

810 N STREET                1007 WEST THIRD AVENUE
277-0572/Fax 274-8982       272-7515

ANCHORAGE, ALASKA 99501

Exhibit 4
Page 16 of 20

153

| | | |
|---|---|---|
| 1 | Q | And you say he's kind of going tit for tat and heading |
| 2 | | him off at a low speed.  Now the two cars have stopped. |
| 3 | A | Um-hum. |
| 4 | Q | You're concentrating again on the -- on Mr. Porter. |
| 5 | A | Yes, sir. |
| 6 | Q | I don't know the exact distance between his car and |
| 7 | | Whittom's,.... |
| 8 | A | Uh-hum. |
| 9 | Q | .....but it was fair.  Somewhere about a car length, |
| 10 | | maybe more. |
| 11 | A | Okay. |
| 12 | Q | He made a full eye contact with me and he saw my |
| 13 | | service revolver was drawn.  I said stop the car, stop |
| 14 | | the car.  Now what you're saying to me is that this man |
| 15 | | without benefit of a back rest in his car you're behind |
| 16 | | him to the outside of his door post? |
| 17 | A | Uh-hum.  (Affirmative) |
| 18 | Q | And you're saying that with his window rolled |
| 19 | | substantially up he's able to physically turn his body |
| 20 | | and rotate it and look at you and make eye contact with |
| 21 | | you and you say he sees your service weapon? |
| 22 | A | Yes, sir. |
| 23 | Q | At this time you say you try to open the door? |
| 24 | A | I tried to open the door a whole bunch of times. |
| 25 | Q | Okay. |

R & R COURT REPORTERS

810 N STREET
277-0572/Fax 274-8982

1007 WEST THIRD AVENUE
272-7515

ANCHORAGE, ALASKA  99501

Exhibit 4
Page 17 of 20

154

| | | |
|---|---|---|
| 1 | A | I -- you know, I don't know when the first time I tried |
| 2 | | was. |
| 3 | Q | So we know that when you turned your tape recorder on |
| 4 | | the car stopped? |
| 5 | A | That's speculation. I kind of think so..... |
| 6 | Q | Well, wait a second here. There's --..... |
| 7 | A | ....though. It lookos like it 'cause I'm saying get out |
| 8 | | of the car. |
| 9 | Q | .....how's that speculation? |
| 10 | A | Because I don't remember exactly when I took -- turned |
| 11 | | it on. |
| 12 | Q | You've made these statements? |
| 13 | A | Yes, sir. |
| 14 | Q | You've made the statements that suddenly Whittom's car |
| 15 | | comes to a stop -- and his car comes to a stop..... |
| 16 | A | Uh-hum. |
| 17 | Q | .....he looks back and looks at your service |
| 18 | | weapon..... |
| 19 | A | Uh-hum. |
| 20 | Q | ......okay, and he makes eye contact with you? |
| 21 | A | Uh-hum. |
| 22 | Q | And you try to open his door? |
| 23 | A | Yes, sir. |
| 24 | Q | And we know based upon Exhibit 1..... |
| 25 | A | Uh-hum. |

R & R  COURT  REPORTERS

810 N STREET                    1007 WEST THIRD AVENUE
277-0572/Fax 274-8982           272-7515

ANCHORAGE, ALASKA 99501

Exhibit 4
Page 18 of 20

| | | |
|---|---|---|
| 1 | Q | .....that Whittom is in this conversation.... |
| 2 | A | I wouldn't..... |
| 3 | Q | .....so we know that Trooper Whittom has arrived? |
| 4 | A | I wouldn't say he's in that conversation at that point. |
| 5 | | We..... |
| 6 | Q | Well, what does JW stand for right there, sir, do you |
| 7 | | know? |
| 8 | A | That stands for Joe Whittom I believe. |
| 9 | Q | And do you think he spoke on your tape? |
| 10 | A | Yes, sir. |
| 11 | Q | And he spoke on your tape one, two, three, four..... |
| 12 | A | Yes, sir. |
| 13 | Q | .....five, six times? |
| 14 | A | Yes, I understand he's there. |
| 15 | Q | And he spoke those six times before you pepper sprayed |
| 16 | | Mr. Porter? |
| 17 | A | It looks accurate. |
| 18 | Q | Okay.  So now we know that he has -- that Trooper |
| 19 | | Whittom is there. |
| 20 | A | Uh-hum. |
| 21 | Q | You ask him for the taser, okay? |
| 22 | A | Right. |
| 23 | Q | He makes a call into the dispatcher..... |
| 24 | A | Sure.  Sure. |
| 25 | Q | .....saying we've got hte guy stopped? |

R & R  COURT  REPORTERS

810 N STREET                1007 WEST THIRD AVENUE
277-0572/Fax 274-8982       272-7515

ANCHORAGE, ALASKA  99501

Exhibit  4
Page 19 of 20

156

| | | |
|---|---|---|
| 1 | A | Right. |
| 2 | Q | So Trooper Whittom tells us the stopping has occurred |
| 3 | | and you have identified that we are less than two |
| 4 | | minutes in this portion of the transcript? |
| 5 | A | I'm -- I'm guessing. |
| 6 | Q | Okay. |
| 7 | A | Again, the time thing, you know, we've kind of been |
| 8 | | over that. I'm guessing. |
| 9 | Q | Okay. And you're telling him to get out of the car, |
| 10 | | get out of hte car. Is there anywhere in here where |
| 11 | | you tell him to stop? |
| 12 | A | No, that was before this. |
| 13 | Q | Okay. You don't tell him to stop here when you pull |
| 14 | | the trigger, do you? |
| 15 | A | No, didn't have time. |
| 16 | Q | You -- isn't it true that you told this team of |
| 17 | | investigators that you sprayed Mr. Porter on the side |
| 18 | | of hte head with your pepper spray? |
| 19 | A | Yes, because he blocked it, that's where -- that's |
| 20 | | where it got him and in the car. |
| 21 | Q | And you said go to page 15 of Exhibit 4. |
| 22 | A | Okay. That's the next page, I'm on it. |
| 23 | Q | Right. Go to..... |
| 24 | A | Oh, wait, I'm sorry. That's -- yes, that's -- I'm on |
| 25 | | it. |

R & R COURT REPORTERS

810 N STREET          1007 WEST THIRD AVENUE
277-0572/Fax 274-8982    272-7515

ANCHORAGE, ALASKA 99501

Exhibit 4
Page 20 of 20