TALIS J. COLBERG
ATTORNEY GENERAL

David D. Floerchinger
Assistant Attorney General
Office of the Attorney General
1031 W. 4th Ave., Suite 200
Anchorage, Alaska  99501
Telephone: (907) 269-5190
Fax: (907) 258-0760
Email: TWC_EFC@law.state.ak.us

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ARTHUR J. PORTER and<br>KRISTIE L. PORTER,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARTHUR J. OSBORN and JOSEPH<br>WHITTOM, individually,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 3:05-cv-00142-TMB

**REPLY TO RESPONSE (OPPOSITION) TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Osborn and Whittom, by and through undersigned counsel, hereby reply to the plaintiffs' opposition to the motion for summary judgment on all claims.

## I.    FACTS

The plaintiffs' misstatements of the factual record in this case are too numerous to address in a single responsive pleading.  However, some of the misstatements must be addressed and are illustrative of how the plaintiff has misrepresented the record to this court.

At page 4 of the plaintiffs' opposition they state:

"Trooper Osborn stated (Ex. 3, p. 22) that based upon the suspicious behavior of Porter was why shots were fired killing Porter." [sic]

Trooper Osborn said nothing of the sort. Read in context, Trooper Osborn was trying to answer a question concerning the time between his last verbal command to the suspect and use of OC spray and the point at which shots were fired. He didn't know that time frame and said nothing about shooting the suspect because of "suspicious behavior."

What Osborn actually said in his deposition is as follows:

Q:    Now, tell him -- you tell him he's been sprayed -- tell them he's been sprayed…
A:    Right.
Q:    …get out. How much time has lapsed?
A:    I don't know. I was watching his activities after the spray went into the car.
Q:    You never went back and listened to your tape to determine how long it was?
A:    I never timed it, no.
Q:    Okay. If you were to hear the tape would it help you?
A:    It -- it would probably help as far as we could time it. But the shooting action, of course, the time frame doesn't have anything to do with the -- the reason the shots were fired. It was based on the suspect's behavior is why.[1]

The behavior that Osborn was talking about is set out three pages earlier in his deposition.

A:    I know it wasn't the case because when he attempted to drive over Trooper Whittom he put both his hands on the wheel and squeezed the wheel in a manner

---

[1]    Defendants' Exhibit A, pp. 95-96.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 2 of 15

where all of his knuckles had turned white and he was gripping the wheel and doing what appeared to be angling the wheel as he heavily accelerated the vehicle and drove towards Trooper Whittom.

Q:    But you didn't -- you don't know to this day whether it was an automatic or manual except based upon the assumptions you heard about?

A:    Yeah, that's correct.  It -- I didn't have it in my mind whether it was a manual or an automatic at the time.

Q:    So he didn't raise his hands -- you say he raised his left hand at the time he was pepper sprayed.  Is that approximately simultaneous to the fact that the vehicle lurched forward?

A:    No sir.  No, not at all.[2]

Eight pages later Osborn again explained why shots were fired.

Q:    Okay.  So at the time you pulled the trigger, how far were you from the back of Mr. Porter?

A:    I don't know, sir.

Q:    The vehicle you said had started out and was about 25 feet away from Whittom's car.

A:    Yeah.  That's a guestimation.  You know, a car length between the two, I'd say.  Something like that.

Q:    Okay.  A car length between the two.  The motor was revving up.  Then all of a sudden the car took off like a bat out of hell?

A:    I don't remember using those terms but yeah it -- it was going…

Q:    Okay.

A:    …full throttle.

Q:    Okay.  You had your weapon drawn?

A:    I already had my weapon drawn previously.[3]

The shots were fired because of the instantaneous behavior of the suspect when he sat up,

grabbed the steering wheel with both hands and revved his engine full throttle spinning

---

[2]        Defendants' Exhibit A, pp. 93-94.

[3]        Defendants' Exhibit A, p. 104.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 3 of 15

his tires and moving toward Trooper Whittom. The plaintiffs prefer to view this behavior as Porter simply stopping and "restarting his journey" when Osborn fired.[4] There is no evidence to support this characterization. This was no journey, it was life-threatening behavior by the suspect requiring instantaneous response from Trooper Osborn in an effort to protect Trooper Whittom.

Plaintiffs also infer two things that simply don't match with the evidence. First they attempt to assert that because Osborn didn't verbally identify himself as a trooper, Mr. Porter could not have known he was being stopped by law enforcement. In addition, because Osborn didn't tell Porter to stop in the split second between Porter revving his engine full throttle and the shots being fired, they seem to argue that Porter didn't know what he was supposed to do.

As evidenced by the transcript from Osborn's recorder, Porter knew exactly who was stopping him and what he was to do.[5] He referred to Osborn as "sir" and when told to get out of the car and <u>asked if he understood</u> the command, he replied "Yes, sir."

| | |
|---|---|
| Osborn: | No, you won't back up, you will get out of the car now. |
| Whittom: | No! Get out, now! |
| Osborn: | Do you understand me? |
| Whittom: | (indiscernible) |
| Porter: | Yes, sir.[6] |

---

[4]    Plaintiffs' Opposition at p. 6.

[5]    Defendants' Exhibit A, p. 215.

[6]    *Id*.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 4 of 15

Finally, plaintiffs would have this court believe that Porter was simply driving at a slow pace when fired upon.  There is no evidence to support this.  The evidence is that Porter was at full throttle, spinning his tires, and directed toward Trooper Whittom.  On review of photos of the scene, defendants' expert Ronald Heusser states that the Porter vehicle was "spinning its tires for a distance somewhat longer than the wheel base before impacting the trooper cruiser."  The photos Mr. Heusser refers to clearly show to any Alaskan driver that Porter was spinning his studded tires in an effort to gain momentum and speed.[7]

While the facts are to be taken in a light favorable to the non-moving party, the plaintiffs can't make up "facts" to support their opposition.

## II.    THE LAW

Plaintiffs concede that the only constitutional claim available to them is for a Fourteenth Amendment due process violation for depriving them of their right to association and society of their adult son.[8]  They argue, however, that the standard to determine whether there has been a violation of the Fourteenth Amendment is the deliberate or reckless indifference standard.  The plaintiffs are simply wrong.

---

[7]    The photo's referenced in Ron Heusser's affidavit were inadvertently omitted when the motion for summary judgment was filed.  Those photos were subsequently filed with an errata and are best seen in a digital format.  They clearly show the spinning of studded tires on ice.

[8]    Plaintiffs' Opposition at p. 10.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 5 of 15

**A.    Pursuant to Ninth Circuit case law, the standard to be applied in this case is whether Trooper Osborn had a purpose to commit harm that shocks the conscience and was unrelated to the protection of his fellow officer.**

The controlling case on this issue in the Ninth Circuit is *Moreland v. Las Vegas Metropolitan Police Dep't.*[9]  A close reading of *Moreland* reveals that it involved a deliberate use of force by police officers and while the court discussed inadvertent harm to a bystander, the controlling issue was the use of force in exigent circumstances when there is no time to deliberate on one's actions.  The Ninth Circuit did not limit the test exclusively to accidental death.

*Moreland* involved a lawsuit brought by the mother of the decedent along with his children.  The decedent, Damon Douglas was shot and killed by Officers Burns and Pope.  The following important facts are taken from the decision.

> As Burns and Pope approached in their vehicle, they spotted a male standing beside a car in the parking lot, firing a semi-automatic handgun at individuals who were returning fire from the eastern side of the lot.
>
> . . . .
>
> When the male failed to comply with the officers' order to stop firing, Burns and Pope both fired at him.  As each officer fired his final shot, the male fell to the ground and crawled away from the officers, toward the bar.  After the shooting stopped, Burns and Pope looked for the male and found Douglas lying on the ground near the front of the bar.  Douglas was taken to a local hospital and died shortly thereafter.  An autopsy and forensics investigation determined that Douglas had been shot once by a bullet fired from Burns'

---

[9]    159 F.3d 365 (9th Cir. 1998).

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 6 of 15

gun that severed a major artery on Douglas' hip.  No gun was found in Douglas's possession, but a semi-automatic pistol was found on the ground in front of the vehicle from which the male had been firing.   Metro's fingerprint examiner excluded Douglas as the source of one of the two prints found on the gun, but could neither exclude nor identify Douglas as the source of the second print.

. . . .

In their inquest testimony and interviews at the scene, Burns and Pope identified Douglas as the man at whom they shot.[10]

The plaintiffs brought their case claiming that Douglas was not the perpetrator but an innocent bystander.  The Moreland court noted

As we explain below, appellants are not entitled to prevail on this claim <u>even if</u> their theory of this case – that Burns missed the shooter and shot a bystander – reflects what actually occurred in the Chances Arr parking lot on September 18, 1993.[11]

Citing to the Supreme Court in *Lewis*,[12] the court noted that the "critical consideration" is "whether the circumstances are such that actual deliberation is practical."[13]  The point is that when immediate action on the part of a police officer is required, the deliberate indifference standard is inapplicable.  Quoting the Supreme Court, the *Moreland* court said:

When unforeseen circumstances demand an officers instant judgment, even precipitate recklessness fails to inch close

---

[10]    *Id*. at 368.

[11]    *Id* at 371.

[12]    523 U.S. 833 (1998).

[13]    *Id*. at 372.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 7 of 15

enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed.

In other words, Burns and Pope were required to act decisively, without the luxury of a second chance to address a life-threatening situation. Had Burns and Pope failed to attempt to disable the male in the parking lot when he refused to comply with their commands to stop firing, they would have failed to address the immediate risk of serious harm or death to the many innocent individuals trapped in the parking lot, as well as the threat the combatants posed to themselves. In such circumstances, the argument for application of the purpose to commit harm standard is <u>even more compelling</u> than it was in Lewis, given the stronger parallels that exist with the prison disturbance context from which this standard was drawn. Indeed, this analogy, which the Supreme Court found hard to avoid with respect to police chases, Id., is inescapable in the type of situation addressed here.[14]

In this case, Mr. Porter was about a car length away from Trooper Whittom's vehicle when Porter grabbed the wheel with both hands and hit the gas full throttle. Trooper Osborn was required to make an instantaneous decision to protect his fellow officer. In such circumstances the "purpose to commit harm standard" is the only applicable standard. The plaintiffs have failed to present even a scintilla of evidence that Osborn had some other purpose than the protection of his fellow officer.

The plaintiffs cite to *Mahach-Watkins v. Depee*,[15] for the proposition that the shocks the conscience does not apply to cases involving a deliberate shooting.[16] A

---

[14]    *Id*.

[15]    Slip Copy, 2006 WL 3041099 (N.D. Cal. October 24, 2006).

[16]    Plaintiffs' Opposition, ¶ 16.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 8 of 15

careful review of *Mahach-Watkins*, however, reveals that the facts would seem to indicate that there was substantial time involved in that case and perhaps even an execution by a police officer. The court, in applying the deliberate indifference test, cited to *Lee v. City of Los Angeles*,[17] a case involving a mentally disabled man who was unlawfully imprisoned for over two years. *Mahach-Watkins* did not address officer conduct in emergent circumstances. The evidence did not support emergent circumstances and thus the standard should not have been the "wrongful purpose" standard.

In this case, there is no evidence other than that Trooper Osborn fired when Casey Porter revved his engine and drove his vehicle toward Trooper Whittom. The distance was short, the engine revved full throttle, and Trooper Osborn responded accordingly. Trooper Osborn had no idea who the individual was threatening Trooper Whittom. There is no evidence that Trooper Osborn had an ulterior motive.

**B.    Even if the deliberate indifference standard applies, Officer Osborn's conduct did not rise to that level.**

Assuming Osborn had time to consider and deliberate on his actions in the second or so that he had to react to Porter's spinning tires, Osborn's conduct does not rise to the level of deliberate indifference.

For a Fourteenth Amendment violation, we know that negligence on the

---

[17]    250 F.3d 668 (9th Cir. 2001).

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 9 of 15

part of Osborn is not enough to support a claim.[18]  We also know that gross negligence is never sufficient to sustain a substantive due process violation.[19]    Only conscience shocking deliberate indifference would be enough if Osborn had time to deliberate.

In the seconds before Casey Porter hit the gas and started spinning his tires, he had told Trooper Osborn that he understood he was to get out of his car.  Then, Casey Porter, in taking the actions he did, created a life-threatening situation to Osborn's fellow officer.  If Osborn was negligent in the manner in which he approached Porter or demanded that he stop and get out of the car, it didn't matter once Porter decided to hit the gas.[20]  At that point, Osborn had to act immediately because Porter was only a car length from Whittom's stationary vehicle.

Trooper Osborn did not have time to deliberate on the need for his immediate action but even if he did, his actions are not conscience shocking.  His sole purpose was to protect his fellow officer.  Osborn's recorded statements, immediately after the shots were fired, demonstrate this point.

Osborn:    Shots…shots fired.  Soldotna, 1-E-16, shots fired.  We're 10-60.  Get medics 10-19.  You okay, WHITTOM?

Whittom:    Yeah.

---

[18]    *Daniels v. Williams*, 474 U.S. 327, 330 (1986).

[19]    *L.W. v. Grubbs*, 92 F.3d 894, 897-898 (9th Cir. 1996) (applying the deliberate indifference standard that "shocks the conscience").

[20]    *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002) ("[T]he fact that an officer negligently gets himself into a dangerous situation will not make it unreasonable for him to use force to defend himself.")

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 10 of 15

| | |
|---|---|
| Osborn: | He was headed straight for ya'. |
| Whittom: | (To AST dispatch) Soldotna, 1-E-20,… |
| Osborn: | 10-4, suspect.  It's the Kenai Keys pull-out.  I can see his hands.  I believe he's 79…I can't see his -- I can see his right hand.  Are you okay, did your car hit you? |
| Whittom: | No, he hit my car. |
| Osborn: | God, I thought he was gonna' kill you…he doesn't…he's not wearing any pants. |
| Whittom: | Yeah.[21] |

Osborn's actions do not meet the level of culpability for a Fourteenth Amendment violation even if the deliberate indifference standard is applied.  Under *Saucier v. Katz*,[22] this court must find the first prong of the two-part test has not been met.

### III.    THE PLAINTIFFS' STATE LAW CLAIMS

The plaintiffs assert that Troopers Osborn and Whittom removed this case to federal court, "leaving the issues of state court behind."[23]  That is simply incorrect. This case was removed to federal court based on the court's original jurisdiction over § 1983 claims.   On its face, 28 U.S.C. § 1367, provides federal courts, which have original jurisdiction over one or more claims, with supplemental jurisdiction over any

---

[21]    Defendants' Exhibit A, pp. 215-216.

[22]    533 U.S. 194 (2001).

[23]    Plaintiffs' Opposition at p. 24.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 11 of 15

other claim that forms part of the same case or controversy.[24]   Contrary to the plaintiffs'

assertion that no state constitutional claims have been made, the plaintiffs did exactly that

at paragraphs 7 and 13 of their first amended complaint filed with this court.[25]

### A.     The state constitutional claims.

Plaintiffs do not even attempt to address the argument that the Alaska

Supreme Court has refused to recognize a private cause of action for violation of the

Alaska Constitution by a State employee.  This court should dismiss the plaintiffs' state

constitutional claims, such as they exist and are stated in the plaintiffs' complaint, based

on the authority provided in the defendants' motion for summary judgment.

### B.     Plaintiffs' common law claims for loss of consortium or emotional distress.

The plaintiffs assert that they have a common law cause of action for

consortium or emotional distress due to the death of their adult son and cite this court to

*Gillispie v. Beta Construction*.[26]   At p. 23 of the opposition they quote from the case

where the court was discussing the cause of action.  "AS 09.15.010 is the appropriate

---

[24]     28 U.S.C. § 1367(a) states: "except as provided in §§ (b) and (c) or as expressly provided otherwise by federal statute, in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution."

[25]     Plaintiffs' First Amended Complaint at docket 28.

[26]     842 P.2d 1272 (Alaska 1992).

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 12 of 15

vehicle for recognizing this loss."[27]  AS 09.15.010, however, specifically addresses minor children.  "A parent may maintain an action as plaintiff for the injury or death of a child below the age of majority."  (Emphasis added)

One only need look to the concurring opinion of Chief Justice Rabinowitz to see that there is no common law right to consortium by parents of a child, particularly an adult child.  The right is only statutory and only applicable to minor children.

While agreeing with the outcome of the case, Chief Justice Rabinowitz lamented:

> I fail to perceive any persuasive reason why a non-dependent parent's right to a claim for loss of consortium for the death of his or her child should not be recognized.[28]

The Porters have no claim for loss of consortium or emotional distress either in the state common law or in the Alaska Statutes for the death of their adult child.

## IV.    CONCLUSION

The court should grant the defendant's motion for summary judgment on the basis that there is no Fourteenth Amendment violation and the Porters have no state law claims available to them as non-dependent parents of an adult child.

As to Trooper Whittom, he took no action that deprived the Porters of the society and companionship of their son and claims against him should be dismissed immediately.

---

[27]      *Id*. at 1274.

[28]      *Id*. at 1274.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 13 of 15

As to Trooper Osborn, his actions did not rise to the level of a violation of the Fourteenth Amendment.  Trooper Osborn certainly had no purpose other than to protect his fellow officer and his actions in doing so are certainly not conscience shocking.  His actions also do not demonstrate deliberate indifference.

Under *Saucier v. Katz*,[29] this court is required to conduct a two step inquiry. First, the court must determine if the officers' conduct violated a constitutional right.[30] Second, the court must determine whether the right is clearly established or whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.[31]  Here the court can stop at the first step.  These officers are entitled to qualified immunity.

DATED this 13th day of February, 2007 at Anchorage, Alaska.

TALIS J. COLBERG
ATTORNEY GENERAL

By:    s/ David D. Floerchinger
Assistant Attorney General
Office of the Attorney General
1031 W. 4th Ave., Ste. 200
Anchorage, AK 99501
Phone: (907) 269-5190
Fax:    (907) 258-0760
Dave_Floerchinger@law.state.ak.us
TWC.ECF@law.state.ak.us
Alaska Bar No. 8511156

---

[29]    533 U.S. 194  (2001)

[30]    *Id*. at 201.

[31]    *Id*.

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 14 of 15

CERTIFICATE OF SERVICE

This is to certify that on this date, a copy of the foregoing Reply on
Motion for Summary Judgment is being electronically served on:

Mark D. Osterman
mosterman@markostermanlaw.com
mdosterman@alaska.com


s/ David D. Floerchinger 2/13/07

Reply to Plaintiffs' Opposition to Motion for Summary Judgment
*Porter v. Osborn, et al.*
Case No.: 3:05-cv-00142-JWS
Page 15 of 15