TALIS J. COLBERG
ATTORNEY GENERAL

Gilman Dana S. Burke
Assistant Attorney General
Office of the Attorney General
1031 W. Fourth Ave., Suite 200
Anchorage, Alaska  99501
Telephone: (907) 269-5190
Fax: (907) 258-0760
Email: TWC.EFC@alaska.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ARTHUR J. PORTER and KRISTIE L. PORTER,  Plaintiffs,  v.  ARTHUR J. OSBORN,  Defendants. | Case No.: 3:05-cv-00142-JWS  **DEFENDANT OSBORN'S MOTION FOR RECONSIDERATION OF ORDER AND OPINION, DOCKET AT 63[1]** |

In order to maintain a claim that Defendant Osborn ("Trooper Osborn") violated their substantive due process Fourteenth Amendment Rights when he used deadly force against their son Casey Porter during a lawful police seizure, Plaintiffs must establish that they have been injured by Trooper Osborn's "abuse of power" in confronting Casey

---

[1] This motion is brought solely on behalf of Trooper Osborn. The Court's Order and Opinion for which Trooper Osborn seeks reconsideration disposes all claims asserted against Defendant Trooper Whittom. Should the Court grant Trooper Osborn's motion and apply the rules of law that defendant Osborn proposes, it will not affect the already favorable outcome for Trooper Whittom. Therefore Trooper Whittom need not, and does not, seek reconsideration.

during a sudden, life threatening emergency. See <u>Moreland v. Las Vegas Metropolitan Police Department,</u> 159 F3d 365, 372-373 (9th Cir. 1998), citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998).  Yet, without considering that Trooper Osborn had a valid basis to detain Casey Porter pursuant to <u>Terry v.Ohio</u>, 392 U.S. 1 (1968); and without considering that an officer has the constitutional right to use deadly force against a resistant suspect who endangers the lives of others ( <u>see</u> <u>Scott v. Harris</u>, ___U.S.___, 127 S. Ct. 1769, 1777 (2007)); and without considering whether a parent's Fourteenth Amendment rights can be violated when there is no violation of the suspect son's constitutional rights during a lawful seizure, this Court has somehow concluded that Plaintiffs' due process claim is viable.  This is analogous to ruling, in a garden variety auto accident case, that a parent may pursue "bystander" NIED and loss of consortium claims without having to prove that the Defendant vehicle driver was negligent.  Such a ruling defies basic principles of law and equity, and warrants reconsideration.

Compounding the problem is that this Court has incorrectly applied a "reckless disregard" threshold to Plaintiffs' due process claim.  This derogates U.S. Supreme Court and 9th Circuit case law holding that in police emergency use of force cases a Fourteenth Amendment substantive due process plaintiff must prove that the defendant's actions "shock the conscience;" recklessness does not suffice.  See <u>Lewis</u> 523 U.S. at 854-855.  See also <u>Moreland v. Las Vegas Metropolitan Police Department</u>, 159 F.3d at 372, holding that the "shocks the conscience" standard articulated in <u>Lewis</u> is not limited to the facts of the <u>Lewis</u> case. And <u>see</u> <u>Radecki v. Barela</u>, 146 F.3d 1227, 1231-1232 (10th Cir. 1998), noting that

Lewis applies to all situations involving police emergency decisions where there is no time for deliberation, and hence no time for the officer to develop "deliberate indifference" to the circumstances. Because this Court appears to have overlooked or misapplied the law governing the requisite level of culpability in Fourteenth Amendment due process tort claims, Trooper Osborn respectfully requests that this Court reconsider its September 24, 2007 summary judgment Order and Opinion, Docket at 63.[2]

## II. AURGUMENT

### A. The Court's Order and Opinion prematurely applies Fourteenth Amendment principles to a cause of action that first requires proof of a Fourth Amendment violation.

Trooper Osborn fully recognizes that as Casey Porter's parents, Plaintiffs' sole remedy for alleged loss of Casey's companionship is a claim that Trooper Osborn violated their (not Casey's) Fourteenth Amendment substantive due process rights. Lee v. City of Los Angles, 250 F.3d 668, 687 (9th Cir. 2001).

---

[2] The Court may treat this motion as being governed by Local Civil Rule 59.1, since the Court's Order is interlocutory in that it does not dispose of all issues of liability causation, and damages. See Civil Rule 56(b). To the extent rule 59.1 applies, Trooper Osborn has filed herewith a motion to allow overlenght brief. The court may also treat this as a motion for relief under Fed. R. Civ. P. 59 (e) or 60 (b). This is because denials of motions for summary judgment based on qualified immunity are immediately appealable if the denial is based on questions of law. Jefferson v. Gomez, 267 F.3d 895 (99th Cir. 2001). To the extent the Court treats this motion for reconsideration as being governed by Rule 59 (e) or 60(b), Trooper Osborn's motion to allow overlength brief is moot.

But what must not be overlooked, and what appears to have been overlooked, is that where a parent's due process claim arises from a police shooting in the context of a lawful police seizure, an essential element to the parental claim is proof that the police violated the son's constitutional rights i.e. his Fourth Amendment rights.

This concept was recognized in Russ v. Watts, 190 F.Supp.2d 1095, 1103 (D. Ill. 2002). Although to Trooper Osborn's knowledge there is no governing 9th Circuit case law directly on point, U.S. Supreme Court case law is compelling. In Scott v. Harris, 127 S.Ct. at 1776-1777, the Court recently re-emphasized that a Fourth Amendment "seizure" occurs where a police officer terminates a suspect's freedom of movement, and that excessive force in the course of a seizure must be analyzed under Fourth Amendment standards. Moreover, in County of Sacramento v. Lewis, a substantive due process tort case arising from a police chase, the Court was careful to explain that the Fourth Amendment did not apply only because there had been no seizure. Lewis, 523 U. S. at 842-843. Applying Russ, Scott v. Harris, and Lewis, this Court should rule that the viability of Plaintiffs' due process claim hinges on whether Trooper Osborn's conduct vis à vis Casey Porter violated the Fourth Amendment. Otherwise, this court will bless a suit for damages that arises out of thoroughly lawful police conduct.

Indeed, Trooper Osborn acted lawfully during all phases of his seizure of Casey Porter, and during his application of deadly force. As the undisputed facts demonstrate,[3] at

---

[3] The Court's Order and Opinion overlooks critical facts which prove that Casey Porter had been lawfully seized when he resisted detention and attempted to flee. The correct critical, undisputed facts are re-cited here.

the time he approached Casey Porter Trooper Osborn was responding to a trustworthy complaint about a driver parked in a remote pull-out in the middle of the night for approximately two and half hours, flashing his lights. When Trooper Osborn arrived, he pulled <u>in front</u> of the vehicle and shined his lights directly at the vehicle. He observed what looked like an empty car. Suddenly, Casey Porter popped up, looked at Trooper Osborn, grabbed the steering wheel and immediately began to try to drive <u>around</u> Trooper Osborn's vehicle, signifying his intent to flee. He continued to drive <u>around</u>, even as Trooper Osborn turned on his flashing lights, pulled his vehicle forward to block Casey Porter, and motioned for Porter to stop.

After temporarily coming to a stop, Casey Porter <u>continued</u> to drive around, even though Trooper Whittom's vehicle had by now arrived and was <u>blocking</u> Casey's vehicle. By this time Trooper Osborn was out of his vehicle, <u>commanding</u> Casey Porter to stop and show his hands. Trooper Whittom backed up, fearing Porter would hit him. Then, Casey Porter said he would back up, signifying that <u>he knew he was not free to leave</u>. He said he understood Trooper Osborn's instructions, another indicator that he knew he was detained. But, he kept putting his hands down, causing Trooper Osborn to suspect Porter was reaching for a weapon.

After being pepper sprayed, Casey Porter revved his engine and, his tires spinning[4], drove at Trooper Whittom whose finger was on the trigger of his own revolver.

The law absolutely exonerates Trooper Osborn up to this point because Trooper Osborn was in the midst of a lawful seizure from which Casey Porter was trying to escape. A seizure occurs where a reasonable person should understand he is not at liberty to ignore police instructions, and is not free to leave. <u>Michigan v. Chesternut</u>, 486 U.S. 567 (1988). Under the Fourth Amendment, a police officer may briefly seize an individual if the officer has a "reasonable suspicion" the individual has committed a crime. <u>Houston v. Clark County Sherriff Deputy John Does 1-5</u>, 174 F.3d 809, 813 (6th Cir. 1999). The suspicion need only be supported by facts indicating that criminal activity "may be afoot." <u>United States v. Sokalow</u>, 490 U.S. 1, 7 (1989). Reasonable suspicion may even be based on ambiguous behavior susceptible to an innocent interpretation. <u>Oliver v. Woods</u>, 209 F.3d 1179, 1189 (10th Cir. 2000) citing <u>Terry v. Ohio,</u> <u>supra</u>.

A seizure based on reasonable suspicion is justified where the suspect's conduct suggests the potential for flight. <u>United States v. Bautista</u>, 684 F.2d 1286, 1288-1289 (9th Cir. 1982). Reasonable suspicion may be indicated by lack of cooperation, or by nervous or evasive behavior. <u>Oliver v. Woods</u>, 209 F.3d at 1187-1188; <u>United States v. Atchley</u>, 474 F.3d 840,848,849 (6th Cir. 2007). Moreover, reasonable suspicion justifying a <u>Terry</u> stop exists where the suspect initiates an unprovoked flight. <u>Illinois v. Wardlow</u>, 528 U.S. 119 (2000). Thus, the law dictates that Trooper Osborn was in no way in violation of

---

[4] See photographs, Docket at 58, which shows marks left by Porter's spinning, studded tires.

Casey Porter's constitutional rights when he seized Casey Porter.

Nor did Trooper Osborn violate Casey Porter's constitutional rights during the ensuing, rapidly escalating events that culminated in Trooper Osborn's use of deadly force. The fact is that Casey Porter unlawfully resisted Trooper Osborn's lawful detention by disobeying Trooper Osborn's commands, winding up his window, moving his vehicle around, revving his engine, and finally spinning his tires to escape the seizure. Casey Porter was breaking the law. See Melson v. Municipality of Anchorage, 60 P.3d 1999 (Alaska Ct. App. 2002), discussing AS 11.81.400. By the time Porter began driving at Trooper Whittom, whose finger was on his pistol trigger (signifying his own recognition of the danger), Trooper Osborn reasonably perceived the need for deadly force. By this point: a) Trooper Osborn had given the suspect warning; b) the suspect posed an immediate threat of serious physical harm to Trooper Whittom; c) and, from the perspective of a reasonable officer in Trooper Osborn's position, deadly force was necessary to prevent serious physical harm to Trooper Whittom. See Scott v. Harris, supra, 127 S.Ct. at 1777, discussing the Fourth Amendment justifications for force enunciated in Graham v. Connor, 490 U.S. 386 (1989) and Tennessee v. Garner, 471 U.S. 1 (1985).

Based on the undisputed facts and the law establishing that Trooper Osborn did not violate Casey Porter's Fourth Amendment Rights during the seizure and use of deadly force incident, this Court should reconsider and vacate its denial of summary judgment. At page 9, Docket no. 63, the Order concludes: "Plaintiffs have shown that Defendant Osborn violated a constitutional right." That conclusion is neither explained nor supported. Trooper

Osborn respectfully requests reconsideration. Upon reconsideration Trooper Osborn requests a summary judgment order specifying that Plaintiff's substantive due process tort claim fails as a matter of law because Trooper Osborn conducted himself lawfully vis à vis Casey Porter.

### B. The Court's order incorrectly applies a "reckless disregard" threshold to plaintiff's Fourteenth Amendment, substantive due process violation claim.

Trooper Osborn also respectfully requests reconsideration because the Court has applied the incorrect standard for tortfearsor culpability to Fourteenth Amendment substantive due process tort claims. Relying on an unpublished (and therefore unreliable - see Local Rule 7.1 (c)) California U.S. District Court opinion that misconstrues 9th Circuit case law, this Court has erroneously concluded that in substantive due process tort claims arising out of sudden emergency deadly force police actions, the parent of the criminal suspect need only prove that the police officer showed "reckless disregard". Because as a matter of law the "reckless disregard" standards does not apply, whereas the "shocks the conscience" and "abuse of power" standards enunciated by the United States Supreme Court and the 9th Circuit Court do apply, this Court should reconsider.

An analysis of the unpublished case relied by this Court, Mechach-Watkins v. Depee, demonstrates that the unpublished decision is bad law. Depee incorrectly distinguishes Moreland v. Las Vegas Metropolitan Police Department, 159 F.3d 365 (9th Cir. 1998), concluding that the "shocks the conscience" standard described in Moreland only applies to the "unintentional killing of and individual by law enforcement officers." That is not a correct statement of Moreland. Moreland did not involve an accidental shooting. It

involved and <u>intentional</u> <u>use</u> <u>of</u> <u>deadly</u> <u>force</u>, an intentional shooting where the officers allegedly shot the wrong suspect, by mistake. <u>Morland,</u>159 F.3d at 368. The use of deadly force was intentional. <u>Id</u>.

Moreover <u>Moreland</u> cites <u>Lewis</u>, 523 U.S. 833 (1998) for the rule that where the police must act in emergency situations, substantive due process is violated only if the police conduct shocks the conscience, and only if the police conduct is "intended to commit harm unrelated to the legitimate use of force necessary to protect the public and themselves." <u>Moreland</u>, 159 F.3d at 372-373, citing <u>Lewis</u> (additional citations omitted). Because <u>Moreland</u> involves intentional deadly force, because <u>Moreland</u> arises out of a lawful police effort to detain a suspect who disobeys lawful police instructions, and because <u>Moreland</u> holds that the "shock the conscience" standard applies in such situations, <u>Moreland</u> is absolutely dispositive. This Court should, and in fact must, apply the <u>Moreland</u> "shocks the conscience" standard. This Court must conclude that Plaintiffs' substantive due process tort claim fails as a matter of law because Trooper Osborn's actions undertaken in a sudden emergency, in order to protect the life of a fellow trooper, were justifiable.[5]

Nor do the Supreme Court's <u>Lewis</u> decision or the 9th Circuit's decision in <u>Lee v. City of Los Angeles</u>, 250 F.3d 668 (9th Cir. 2001) support the conclusion that a lesser "reckless disregard" threshold applies. In <u>Lee</u>, which involved an unlawful, prolonged incarceration (which has nothing to do with deadly force used during a police seizure), the

---

[5] In reconsidering, the court should note that in another unpublished decision, <u>Dillard v. Curtis</u>, WL 2496130 (D. Cal. 2004) the Court, citing <u>Moreland</u>, ruled that the "shocks the conscience" standard applies in police deadly force cases giving rise to due process claims.

Motion to Reconsider
*Porter v. Osborn*
3:05-cv-00142-JWS
Page 9 of 12

Court denied a Rule 12(b)(6) motion on the grounds that the substantive due process complaint was sufficient to survive "notice pleading" standards. Nowhere does Lee infer that "reckless disregard" should apply to Trooper Osborn's actions. Moreover, in Lewis, the Supreme Court ruled that a law enforcement official's use of force in a sudden emergency must "shock the conscience" for a Fourteenth Amendment tort claim to be sustained. 523 U.S. at 846-847. True, Lewis recognizes that in some instances recklessness may "shock the conscience", such as in Eighth Amendment tort cases arising from prisoner medical mistreatment. Id. at 849-850. But, Lewis also holds that "a much higher standard" must apply in emergency situations, where the officer has no time to deliberate or develop thoughts of alleged "indifference". 523 U.S. at 853-855.

Furthermore Lewis is not so self-limiting that it applies only to the facts presented therein. As the 9th Circuit held in Moreland, Lewis is expansive enough that its "shock the conscience" and "abuse of power" standards should apply in all cases where "unforeseen circumstances demand an officer's instant judgment..." Moreland, 159 F.3d at 372. In other words, Moreland dictates that the Lewis "shocks the conscience" standard governs. On reconsideration this Court should so rule.

### C. The Court's application of the "reckless disregard" standard subverts qualified immunity in police detention/use of force cases.

Trooper Osborn additionally requests that this Court, in reconsidering its Order and decision, appreciate the subversive effect that the "reckless disregard" standard has on Trooper Osborn's qualified immunity under the Fourth Amendment. Saucier v. Katz, 533

U.S. 194 (2001) and <u>Graham v. Connor</u>, 490 U.S. 386 (1989) dictate that in police seizure, arrest, and use of force cases, immunity attaches absent egregious constitutional violations. The doctrine of qualified immunity addresses the policy concern that few individuals would endure public service if they risked personal liability as a result of their official decisions. <u>Malley v. Briggs</u>, 457 U.S. 335, 339 (1986).  Because of this purpose a reasonable, <u>even if mistaken</u>, belief that the official's conduct was legal is sufficient to trigger immunity. <u>Saucier v. Katz</u>, 533 U.S. at 206. Qualified immunity is broad; it protects all but the plainly incompetent or those who <u>knowingly</u> (not recklessly) violate the law.  <u>Hunter v. Bryant</u>, 502 U.S. 224.  <u>Malley v. Briggs</u>, 475 U.S. at 341.

   Allowing a substantive due process tort claim to proceed based on alleged evidence of "reckless disregard" severely undermines qualified immunity protection.  That is one of the reasons why courts are so reluctant to apply Fourteenth Amendment analysis to Fourth Amendment cases.  It is why the <u>Lewis</u> Court was very careful to apply Fourteenth Amendment standards only after determining that there was no seizure, and was careful to specify that: "if a constitutional claim is covered by a specific constitutional provision such as the Fourth Amendment...the claim must be analyzed under the standard appropriate to that specific provision, not under the rubrick of substantive due process".  <u>Lewis</u>, 523 U.S. at 843-844.  Trooper Osborne respectfully submits that the Court's Order and Opinion oversteps the fine line drawn by <u>Lewis</u>.  In crossing that line, and in applying a "reckless disregard" standard, the Court had subverted Trooper Osborn's rights.

### III. **CONCLUSION**

For the foregoing reasons, Trooper Osborne respectfully requests that the Court reconsider and vacate its Order and Opinion, Docket at 63. Trooper Osborne requests that the Court enter summary judgment in his favor and against Plaintiffs on all claims.

DATED this 1st day of October, 2007, at Anchorage, Alaska.

TALIS J. COLBERG
ATTORNEY GENERAL


By: /s/Gilman Dana S. Burke
Assistant Attorney General
Office of the Attorney General
1031 W. Fourth Ave., Ste. 200
Anchorage, AK 99501
Phone: (907) 269-5190
Fax: (907) 258-0760
Dana.Burke@alaska.gov
TWC.ECF@alaska.gov
ABA No. 9011085

This is to certify that on this date, a copy of the
foregoing Defendant Osborn's Motion to Reconsider
is being served via electronically to:

Mark Osterman
215 Fidalgo, Ste 106
Kenai AK 99611

s/Gilman Dana S. Burke 10/1/07