Mark D. Osterman, Attorney
Osterman Law Office, P.C.
215 Fidalgo Drive, Suite 106
Kenai, Alaska 99611
907-283-5660

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ARTHUR J. PORTER, and )
CHRISTIE L. PORTER, )
)
    Plaintiffs, )
)
vs. )
)
ARTHUR J. OSBORN, )
) Case No. 3:05-cv-00142 JWS
    Defendant )
_____)

### *RESPONSE TO MOTION FOR RECONSIDERATION*

Under Rule 59(e) of the Federal Rules of Civil Procedure and Civil Local Rule, the granting of a motion for reconsideration is a matter of discretion for a district court and is appropriate if the district court: (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *School District No. 1J, Multnomah County v. A C and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). *Sanchez v. Johnson*, 301 F. Supp. 2d 1060, 1061-1062 (D. Cal. 2004) aff'd 416 F.3d 1051 (9th CA 2005).

At no time has any new evidence been presented. Trooper Osborn uses a lot of dicta and a change of words in an effort to excite a change, and yet these words raise issues of fact and not law. The Defense fails to

establish any change in evidence or any change in the law and there is no basis for granting Reconsideration.

Trooper Osborn (Defendant) begins his argument that Mr. and Mrs. Porter must prove that they were injured when Trooper Osborn, after aggressively assaulting Casey Porter, un-holstered, aimed and shot Casey Porter in the back five times. Trooper Osborn agrees partially that "Plaintiff's sole remedy for alleged loss of Casey's companionship is that Trooper Osborne violated their 14th Amendment substantially due process right." This admission is not new. (Memo for Recon p.3, Docket 67). While this is not a complete statement of constitutional losses, it differs from the opening statement found on Memo for Recon, p.1.

The second issue that Trooper Osborn contests is a factual one and is subject to dispute, but is more equipped for a jury and not for Reconsideration. Undoubtedly, there is a genuine issue of material fact about whether this was a "sudden, life threatening emergency."

Trooper Osborne continues to claim there was a legitimate <u>Terry</u> stop. At no time has trooper Osborn offered any evidence that there was a reasonable, articulable suspicion that would legitimize Osborn's brutal treatment of Casey Porter. Trooper Osborn bears the burden of proof. The mere concept of a "suspicious vehicle" was obvious police jargon[1]. Cars do not look or act suspicious. They may be operated in a suspicious manner but a parked car in a public parking lot is not, of itself, suspicious. Indeed, just the opposite.

---

[1] *United States v. Marshall*, 488 F2d 1169, 1171 n.1 (9th Cir 1973).

Trooper Osborn next argues that the court has incorrectly applied the "reckless disregard" threshold to the due process claim. Melding *Lewis*[2] and *Moreland*[3] together and claiming that these cases state the standard for "shocks the conscience" in <u>intentional</u> conduct will not add trump to their hand. Trooper Osborn misses the point that drawing his weapon, aiming it and pulling the trigger 5 times while intending to kill and indeed killing Casey Porter is an intentional act and not merely negligent. It was contemplated, considered and evaluated when he shot. Indeed, even the pages and citations cited by Mr. Osborn support this position.[4] Trooper Osborn adds *Radecki v. Barela*[5] into the mix for the first time but it carries the same problems seen in *Lewis* and *Moreland*: these are not intentional acts. *Radecki* does not differ from this Court's decision but rather the decision granting partial summary judgment in this case but parallel's the findings in *Radecki*.[6] The lack of discussion of *Radecki* should not go unnoticed.

A.

Trooper Osborn argues that under *Russ v. Watts*[7] there is a necessity to plead a violation of the 4th Amendment rights. The Amended

---

[2] *County of Sacramento v. Lewis*, 523 U.S. 833,
[3] *Moreland v. Los Vegas Metro Police Dept.*, 159 F3d 365 (9th Cir, 1998)
[4] For instance, in *Moreland* at 372: "The United States Supreme Court recently considered the standard of culpability applicable to substantive due process claims arising from the **unintentional** killing of an individual by law enforcement officers" referring to *Lewis*.
[5] 146 F3d 1227, 1231-1232 (10th Cir 1998)
[6] This case focuses on an officer confronted with an emergency when a suspect gains control of his gun and shoots a person helping the officer. The contrast is that the officer was confronted with an emergency. In the present case, Casey Porter was harassed and assaulted by Trooper Osborn then shot in the back after Osborn had plenty of time to deliberate his conduct. No emergency and no crime had been committed.
[7] 190 F Supp 2d 1094, 1103 (D Ill 2002)

Complaint asserts an illegal seizure at paragraph 10. Not only was a 4th Amendment violation alleged, its presence is there to establish what when Trooper Osborn engaged in the "ultimate" and un-appealable seizure of the life of Casey Porter, he deprived Mr. and Mrs. Porter of the association with their son. Osborn infers that he had no idea that his acts would deprive the Porters' of association in their son. The idea of the "ultimate seizure" escapes Mr. Osborn. This issue presents nothing new but tries to reargue the same material.

Responding again to the issue of a police investigation let us not forget that the car <u>described</u> by Dispatch <u>did not</u> <u>match</u> the car Trooper Osborn encountered.

Trooper Osborn again argues that he responded to a trustworthy source (unnamed DOT driver he did not know) about a suspicious driver. (Memo to Recon p. 5). Osborn argues that these are undisputed facts <u>but</u> they are indeed disputed. Trooper Osborn had no idea whether the source was reliable or that he was to investigate a driver. Trooper Whittom was dispatched to a "suspicious car."[8] (See also Plaintiff's Response to Sum. Jmt.,(Docket 54) Exhibit 1, page 11-12 concerning the only suspicious thing about the car was it might be abandoned, or maybe someone was asleep as discussed below).

---

[8] See Plaintiff's Response to Summary Judgment, Exhibit 1, page 1:
```
20  Q      You received a call -- or no, I'll take that back.
21         Trooper Whittom received a call.....
22  A      That's correct.
23  Q      .....for a suspicious vehicle?
24  A      That's correct.
25  Q      And you acted on that?
```

Opposition to Reconsideration   -4-

Trooper Osborn argues again that he was engaged in a "lawful seizure." Yet Trooper Osborn has never articulated to this Court what warrant had been issued and if not, what exception to the warrant requirements existed that would pass Constitutional muster. Not only did Trooper Osborn approach the wrong colored, not-doing-anything-wrong car, the mere articulated statement that it was abandoned is insufficient for probable cause or a reasonable, articulable suspicion needed under *Terry.* Added to it that Trooper Osborn admits that he sleeps in turn-outs himself and that they are safe, then this is not suspicious activity. (Opposition to Sum Disp, Exhibit 2, p.18).

Trooper Osborn's string-cites and his brief synopses of those findings are meaningless since there is no crime or suspicious activity. The whole idea is that Casey Porter needed to be a suspect of some kind, and the radio dispatch did not make his conduct illegal unless flashing interior lights is illegal.

Trooper Osborn has never established that there were any "escalating" events (Recon p. 12) that he did not himself precipitate. Trooper Osborn's response to Casey Porter's questions was not to answer the questions. According to Trooper Osborn, Casey Porter was stalling for time and resisting a police officer and these actions were reasons to shoot him. (Opposition, Ex 3 pp 2-3). Somehow Casey Porter was supposed to know that the police were investigating him for some unknown, unnamed crime that had been committed and Porter was the

un-described, not-identified perpetrator of the unknown, unnamed crime. Even Trooper Osborn agreed that there is nothing illegal about parking and sleeping in turn-outs. [9]

Again, this argument is nothing new.

B.

Trooper Osborn argues that the Court's reliance on an unpublished opinion in light of the extended and attenuated facts conjured up by them is wrong. Defense had the chance to argue this issue in a Reply and failed to do so until now. Indeed, their own Reply to the Plaintiff's Opposition to Summary Judgment argues its application and not that it was unpublished.[10] Defense argued the case and now argues it si unimportant to be considered.

The phrase that Trooper Osborn wants the Court to accept are the "sudden emergency deadly force police action" and to dismiss "reckless

---

9  Response Exhibit 2, p 8.

```
1  Q    You know that people pull over into these turn outs
2       sometimes at night and sleep because they're tired?
3  A    I do it myself, sir.
4  Q    Okay.  Because they don't want to fall asleep?
5  A    Absolutely.  It's safe.  That's great.
6  Q    So when this person sits up startled, pull himself up
7       and looks around, it was obvious to you they had their
8       seat reclined?
9  A    At that point it was.
10 Q    Okay.  And it was obvious to you too that whoever it
11      was had just been startled by your appearance?
12 A    Yes.
```

10 (Docket 61, Reply to Response "The plaintiffs cite to *Mahach-Watkins v. Depee*, for the proposition that the shocks the conscience does not apply to cases involving a deliberate shooting. A careful review of *Mahach-Watkins*, however, reveals that the facts would seem to indicate that there was substantial time involved in that case and perhaps even an execution by a police officer. The court, in applying the deliberate indifference test, cited to *Lee v. City of Los Angeles*,17 a case involving a mentally disabled man who was unlawfully imprisoned for over two years. *Mahach-Watkins* did not address officer conduct in emergent circumstances. The evidence did not support emergent circumstances and thus the standard should not have been the "wrongful purpose" standard." Reply to Opposition to Motion for Summary Judgment, pp 8-9

Opposition to Reconsideration   -6-

disregard." The concept of "reckless disregard" is merely a polite way of saying that Trooper Osborn deliberately, wantonly and willfully shot and killed Casey Porter.

Trooper Osborn next argues (Memo Recon p. 9) that in *Moreland*, the use of deadly force was intentional and cites *Moreland* 159 F3d at 368. But the Moreland Court did not agree with Trooper Osborn:

> "Accordingly, we hold that Las Vegas police officers Burns and Pope did not violate the plaintiffs' substantive due process rights to family association when the boy [sic] **accidentally shot and killed Douglas**, because the officers were responding to the extreme emergency of public gunfire and did not intend to commit any harm unrelated to the legitimate use of force necessary to protect the public and themselves." (Emphasis added 159 F3d at 373).

Trooper Osborn goes on to claim (Memo p 9) that *Lee v. City of LA*, 250 F.3d 668(9th Cir. 2001) does not support the conclusion that the "reckless disregard" threshold applies. Yet the issues are the 14th Amendment claim where the *Lee* Court stated:

> "Plaintiffs repeatedly allege in their First Amended Complaint that all defendants acted with **reckless disregard** for Kerry Sanders's rights. This is sufficient to survive a motion to dismiss."

Osborn goes on to argue that no where does *Lee* argue that actions like the homicide of Casey Porter, which the quote above reconciles. Defendant Osborn also argues that a "much higher standard" must be held. The full quote from *County Of Sacramento v. Lewis* reads:

> "We accordingly held that a much higher standard of fault than deliberate indifference has to be shown for officer liability **in a prison riot**." 523 U.S. 833 at 853.

Nowhere is there any discussion about a differing standard for "sudden emergency."

C.

The argument that the "reckless disregard" standard damages qualified immunity has no basis in law and fact and has already been covered in argument by the Defendants in their Reply to the Response document (Docket 61). They add citation to other decisions, such as *Graham v. Conner* which states:

> "We reject this notion that all excessive force claims brought under § 1983 are governed by a single generic standard. As we have said many times, § 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)." *Graham v. Connor*, 490 U.S. 386, 393-394 (U.S. 1989)

The minimum standard of "reckless disregard" finds substantial disfavor with Trooper Osborn, who argues that this will have a chilling effect upon public servants or those seeking public employment. In the argument for "public policy" perhaps it is easier to argue that citizens should not be shot for being in a parked car in a parking lot at night.

CONCLUSION

Nothing argued in the Motion for Reconsideration is different than the underlying Motion for Summary Judgment. The arguments are the same and the fact that Trooper Osborn cannot get the correct standard is not a basis for this Court to change its earlier decision.

Respectfully submitted:

\_\_/s_____10/15/07\_\_\_\_
Mark D. Osterman (0211064)
Attorney for Mr. and Mrs. Porter