1983.'"[19]  "Moreover, 'the First Amendment protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'"[20]  Based on Ninth Circuit case law, it appears that plaintiffs have protected rights to familial association under both the Fourteenth and First Amendments, and that the same standard applies in determining whether defendants violated plaintiffs' rights to familial association under the Fourteenth and First Amendments.[21]  Plaintiffs' rights to familial association under the Fourteenth and First Amendments are actionable pursuant to 42 U.S.C. § 1983.  The court will refer to plaintiffs' claims for violations of their rights under the Fourteenth and First Amendments as plaintiffs' claims under 42 U.S.C. § 1983.

 Defendants next argue that they are entitled to summary judgment on plaintiff's claims under § 1983 on the basis that they have qualified immunity.[22]  Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[23]  In *Saucier v. Katz*, the Supreme Court established a two-prong analysis for qualified immunity cases.[24]  First, the court must determine whether the alleged facts, viewed in the light most favorable to the nonmoving party, show that the officer's conduct violated a constitutional right.  If the court determines that the alleged conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.  If a violation occurred, the

---

[19]*Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (quoting *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1995)).

[20]*Id.* (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984)).

[21]*Id.* at 685-686.

[22]Doc. 46 at 2.

[23]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[24]533 U.S. 194, 201 (2001).

court must then determine whether the violated right was clearly established. A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[25]

In this case, defendants contend that the court can stop at the first step of the two-step analysis because defendants' conduct did not violate a constitutional right. The parties disagree on what standard applies in determining whether defendants violated plaintiffs' rights under the Fourteenth and First Amendments. Relying on the Supreme Court's decision in *County of Sacramento v. Lewis*,[26] and the Ninth Circuit's decision in *Moreland v. Las Vegas Metropolitan Police Department*,[27] defendants argue that "the standard to be applied in this case is whether Trooper Osborn had a purpose to commit harm that shocks the conscience and was unrelated to the protection of his fellow officer."[28] However, *Lewis* and *Moreland* are clearly distinguishable from the present case.

In *Lewis*, the Supreme Court intended "to resolve a conflict among the Circuits over the standard of culpability on the part of a law enforcement officer for violating substantive due process in a pursuit case."[29] The Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plights do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."[30]

In *Moreland*, the Ninth Circuit addressed the question of what level of culpability applies "in cases where it is alleged that an officer inadvertently harmed a bystander while responding to a situation in which the officer was required to act quickly to prevent

---

[25]*Id.*

[26]523 U.S. 833 (1998).

[27]159 F.3d 365 (9th Cir. 1998).

[28]Doc. 61 at 6.

[29]*Lewis*, 523 U.S. at 839.

[30]*Id.* at 854.

-7-

Exhibit    A
Page    7   of   12

an individual from threatening the lives of others."[31] The Ninth Circuit held that the police did not violate plaintiffs' substantive due process rights to family association "when they accidentally shot and killed [plaintiffs' deceased], because the officers were responding to the extreme emergency of public gunfire and did not intend to commit any harm unrelated to the legitimate use of force necessary to protect the public and themselves."[32] In both *Lewis* and *Moreland*, the courts applied a heightened "shocks the conscience" standard.

Citing *Mahach-Watkins v. Depree*,[33] plaintiffs argue that the "deliberate indifference" standard applies to the facts in this case. *Mahach-Watkins* involved the traffic stop of a man on a bicycle, who ran away and was chased by a law enforcement officer. A fight between the officer and man ensued, during which the officer drew his gun and shot the man several times, killing him. Distinguishing *Lewis* and *Moreland*, which involved the "unintentional killing of an individual by law enforcement officers," the district court held that in a case involving an intentional killing, the "deliberate indifference" standard applies to Fourteenth Amendment familial association claims.[34] Plaintiffs also cite *Lee v. City of Los Angeles*,[35] in which the Ninth Circuit held that plaintiffs had sufficiently alleged violations of their rights to familial association under both the First and Fourteenth Amendments based on the "reckless, intentional and deliberate acts and omissions of defendants."[36]

Based on the facts of this case and the case law cited by the parties, the court concludes that the applicable standard here is one of deliberate indifference. In *Lewis*, the Supreme Court stated that the deliberate indifference standard "is sensibly

---

[31]*Moreland*, 159 F.3d at 372.

[32]*Id.* at 373.

[33]2006 WL 3041099, *3 (N.D.Cal. 2006).

[34]*Id.*

[35]250 F.3d 668 (9th Cir. 2001).

[36]*Id.* at 686.

Exhibit   A
Page   8   of   12

employed only when actual deliberation is practical."[37] The court further explained that by "actual deliberation," it did not mean "'deliberation' in the narrow, technical sense in which it has sometimes been used in traditional homicide law."[38] Rather, the court suggested that deliberation "may exist and may be entertained while the man slayer is pressing the trigger of the pistol that fired the fatal shot[,] even if it be only for a moment or instant of time."[39]

Here, defendants were not involved in a high-speed chase, nor were the officers responding to an extreme emergency which involved danger to the public and themselves. In addition, unlike in *Lewis* and *Moreland*, the facts of this case involve a deliberate shooting. The undisputed evidence shows that Trooper Osborn fired five shots at Casey Porter from a relatively short distance, shortly after spraying Porter with pepper spray and telling Trooper Whittom to tell the dispatcher that Osborn had pepper sprayed the driver. The above facts suggest that Osborn had the opportunity to deliberate before pulling the trigger five times.

Defendants argue that even if Trooper Osborn had "time to deliberate on the need for his immediate action...his actions are not conscience shocking."[40] In response, plaintiffs point to evidence that shortly after the shooting, Trooper Whittom stated that he was "shocked" that Trooper Osborn fired shots into the driver in this situation. In response to defendants' argument that Trooper Osborn acted to protect Trooper Whittom, plaintiffs cite evidence that Trooper Whittom did not believe he was in danger at the time and that Porter's car did not have good traction on the ice and was moving fairly slowly. Plaintiffs also cite evidence that the trajectory of the car may have been altered after Casey Porter was shot. Viewing the evidence in the light most favorable to plaintiffs, plaintiffs have shown that defendant Osborn violated a constitutional right. Furthermore, given the facts and circumstances here, the court concludes that the right

---

[37]*Lewis*, 523 U.S. at 851.

[38]*Id.* at 851 n.11.

[39]*Id.* (quoting *Caldwell v. State*, 84 So. 272, 276 (1919)).

[40]Doc. 61 at 10.

violated was clearly established right. Plaintiffs have presented triable issues of fact as to whether defendant Osborn acted with deliberate indifference. Accordingly, summary judgment is inappropriate as to plaintiffs' § 1983 claims against defendant Osborn.

Defendants argue that plaintiffs have no claims under § 1983 against Trooper Whittom because he did not fire his weapon and thus did not deprive plaintiffs of the society and companionship of their son.[41] Plaintiffs argue that Trooper Whittom assisted Trooper Osborn by "us[ing] his automobile in an effort to block Casey Porter from leaving."[42] Viewing the evidence in the light most favorable to plaintiffs, plaintiffs have failed to show that Trooper Whittom's alleged conduct violated a constitutional right. Essentially all he did was to provide back-up to defendant Osborne, and in doing so did nothing to which liability could rationally be attached. Plaintiffs have not raised a triable issue of fact as to whether defendant Whittom acted with deliberate indifference. Because plaintiffs have failed to produce any evidence showing that defendant Whittom acted with deliberate indifference, defendants are entitled to summary on plaintiffs' § 1983 claims against defendant Whittom.

Defendants next argue that plaintiffs "have no state law claims" because Alaska case law does not provide for loss of consortium or emotional distress damages for parents of an adult child and "the Alaska court has never approved of a 'Bivens like' remedy under the Alaska Constitution."[43] In *Gillispie v. Beta Construction*,[44] the Alaska Supreme Court ruled that under AS § 09.15.010, a parent may maintain an action for loss of consortium resulting from "the injury or death of a child below the age of majority."[45]

---

[41] Doc. 46 at 16.

[42] Doc. 54 at 19.

[43] Doc. 46 at 16.

[44] 842 P.2d 1272 (1992).

[45] AS § 09.15.010.

Exhibit   A
Page   10   of   12

Plaintiffs argue that the fact that "Alaska law may not recognize an adult child consortium-type claim...does not automatically preclude the right to the companionship of an adult child beyond the confines of a wrongful death action."[46] Because plaintiffs do not cite any Alaska statutes or case law recognizing a cause of action for loss of consortium or emotional distress for parents of an adult child and plaintiffs do not provide any evidence in support of their state law claims, the court will dismiss plaintiffs' state law claims for loss of consortium and emotional distress.

As to plaintiffs' claims under the Alaska Constitution, defendants argue that "the Alaska Supreme Court has refused to recognize a private cause of action for violation of the Alaska Constitution by a State employee."[47] Plaintiffs contend that the issues raised by defendants "concerning the Alaska Constitution are without merit here" because defendants "removed this matter to the federal court leaving the issues of state court behind."[48] Plaintiffs' argument is unavailing because pursuant to 28 U.S.C. § 1367, this court may exercise supplemental jurisdiction over state law claims that are related to claims over which the court has original jurisdiction. Because plaintiffs fail to respond to defendants' argument that Alaska law does not recognize a private case of action for violation of the Alaska Constitution by a State employee and fail to articulate a basis for their claims under the Alaska Constitution, the court will dismiss plaintiffs' claims for violations of the Alaska Constitution.

## V. CONCLUSION

For the reasons set out above, defendants' motion at docket 46 for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as follows. Defendants' motion is **GRANTED** as to plaintiffs' state law claims and claims under 42 U.S.C. §§ 1985 and 1986 against defendants Osborn and Whittom, and all of plaintiffs' state law claims and claims under 42 U.S.C. §§ 1985 and 1986 against both defendants are **DISMISSED**. Defendants' motion for summary judgment is **DENIED** as to plaintiffs' claims under 42

---

[46]Doc. 54 at 24.

[47]Doc. 61 at 12.

[48]Doc. 54 at 24.

Exhibit   A
Page   11   of   12

U.S.C. § 1983 against defendant Osborn, and **GRANTED** as to plaintiffs' claims under 42 U.S.C. § 1983 against defendant Whittom. All claims against defendant Whittom are **DISMISSED**.

DATED at Anchorage, Alaska, this 24th day of September 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

Exhibit A
Page 12 of 12