UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ARTHUR PORTER and KRISTIE PORTER, | )<br>)<br>) |
| Plaintiffs, | ) 3:05-cv-00142 JWS<br>) |
| vs. | ) ORDER AND OPINION<br>) |
| ARTHUR J. OSBORN and JOSEPH WHITTOM, individually, | ) [Re: Motion at Docket 46]<br>)<br>) |
| Defendants. | )<br>) |

## I. MOTION PRESENTED

At docket 46, defendants Arthur J. Osborn and Joseph Whittom ("defendants") move for summary judgment dismissing plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. At docket 54, plaintiffs Arthur Porter and Kristie Porter ("plaintiffs") oppose the motion. Defendants reply at docket 61. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This action arises out of the death of Casey Porter, plaintiffs' adult son. On January 4, 2003, at about 2:00 a.m., Casey Porter was parked in a pull-out near Mile 80 of the Sterling Highway. After receiving a complaint from a snow plow driver about the occupant of the parked vehicle flashing the vehicle's lights, a dispatcher for the Alaska State Troopers dispatched Trooper Joseph Whittom to the pull-out. Trooper Arthur J. Osborn also responded to the scene and arrived ahead of Whittom. Upon arrival,



Exhibit ___A___

Page ___1___ of ___12___

Trooper Osborn pulled up to the side of the parked vehicle, shining his vehicle's headlights at the driver's side. While Trooper Osborn radioed in the license plate number, Casey Porter sat up in the driver's seat, which was reclined, and began to drive forward, but then stopped.

Trooper Whittom parked his vehicle about a car-length away from the front of Porter's vehicle. Trooper Whittom exited his vehicle and stood on the passenger's side behind the open passenger door. At some point, Trooper Osborn turned his tape recorder on. A transcript of the ensuing encounter between the troopers and Porter follows:

| | |
|---|---|
| JO: | ...get out of the car! Get out of the car, now! Get out of the car.[1] |
| CP: | What's wrong, sir? |
| | |
| JW: | (indiscernible) |
| JO: | Get out of the car. |
| JW: | Throw up your hands, get in your veh...get out of your vehicle! |
| CP: | Okay. No, no problem...I'll back up. |
| | |
| JO: | No, you won't back up, you will get out of the car now. |
| JW: | No! Get out, now! |
| JO: | Do you understand me? |
| JW: | (indiscernible) |
| CP: | What's wrong, sir? I was just parked. |

(pepper spray being sprayed)

| | |
|---|---|
| CP: | Ahhh...I didn't do nothing! |
| JO: | Tell him he's been sprayed. Get out. |

(five shots fired)

| | |
|---|---|
| JO: | Shots...shots fired. Soldotna, 1-E-16, shots fired. We're 10-60. Get medics 10-19. You okay, Whittom? |
| JW: | Yeah.[2] |

---

[1] JO refers to Trooper Osborn, CP refers to Casey Porter, and JW refers to Trooper Whittom.

[2] Doc. 46, exh. A at 215; Doc. 54, exh. 7 at 1.

-2-

Exhibit A
Page 2 of 12

After Trooper Osborn fired shots into Porter's back, Porter's vehicle rolled approximately five feet before coming to a stop, hitting Trooper Whittom's vehicle.[3] When Porter's vehicle hit Trooper Whittom's vehicle, Whittom felt a "little push" on his leg.[4] Casey Porter died shortly after being shot.

A few hours after the incident, Investigator Dane Gilmore interviewed Trooper Whittom. In the interview, Trooper Whittom recalled standing outside his vehicle, hearing Porter's vehicle engine rev, and then seeing Trooper Osborn "shoot through the back window into the driver."[5] Trooper Whittom reported that his initial thought was "the shock...I couldn't...I couldn't believe that shots were fired in...in a situation like this."[6] Trooper Whittom further stated that Porter's vehicle did not get much traction on the ice and was going about five or ten miles an hour when it struck his vehicle.[7]

In the initial interview, Trooper Whittom stated, "I guess from my... my perspective, I didn't see uh...that shots were warranted in this situation. Um...I didn't feel any danger to myself when the sus...when the driver of the...or the suspect vehicle decided to um...gun it."[8] In a subsequent deposition, Trooper Whittom stated that he later retracted his initial statement. Trooper Whittom stated, "I realized that although the perceived danger wasn't there and I didn't feel that I was in danger, but my actions, in other words, must have indicated so because when I withdrew from the vehicle again I had taken some steps that I hadn't really consciously made note of to begin with,"[9]

---

[3] Doc. 46, exh. A at 218.

[4] Doc. 46, exh. 5 at 52.

[5] Doc. 46, exh. A at 218.

[6] Id.

[7] Doc. 46, Exh. A at 219.

[8] Doc. 46, exh. A at 220.

[9] Doc. 46, exh. B at 26.

Exhibit  A
Page  3  of  12

namely he had released the safety on his own gun and "was starting to take up a little bit of the slack on the – on the trigger."[10]

On December 30, 2004, Arthur Porter and Kristie Porter filed a complaint in the Superior Court for the State of Alaska, Third Judicial District at Kenai, alleging violations of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1985. Plaintiffs' complaint also alleged violations of plaintiffs' rights under numerous articles of the Constitution of the State of Alaska. Defendants timely removed plaintiffs' complaint to federal district court on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

Plaintiffs subsequently filed an amended complaint, alleging claims against defendants Osborn and Whittom pursuant to 42 U.S.C. § 1983.[11] Plaintiffs' amended complaint alleges that the relief sought is based on violations of plaintiffs' "rights of association, due process, equal protection, privacy, the right to life and liberty and the right of the privileges and immunities of the Alaska Constitution and the United States Constitution."[12] The complaint further alleges that this court has jurisdiction over the alleged claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Plaintiffs' amended complaint also states that "[r]elief is further sought pursuant to Alaska Constitution, common law and those causes permitted under Alaska Law."[13] Plaintiffs are suing in their individual capacities and not as representatives of Casey Porter's estate.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56© provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to

---

[10]Doc. 54, exh. 5 at 26 and 49.

[11]Doc. 28. Plaintiffs voluntarily dismissed other defendants named in the first amended complaint on February 10, 2006.

[12]Doc. 28 at 2.

[13]Id.

Exhibit A
Page 4 of 12

show that material facts are not genuinely disputed.[14] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[15] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[16] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[17]

### IV. DISCUSSION

Defendants move for summary judgment dismissing all of plaintiffs' federal and state law claims. The court first considers plaintiffs' federal claims. Defendants argue that the only federal claim available to plaintiffs is a Fourteenth Amendment due process claim based on the deprivation of their right to the association and society of their adult son, which is actionable pursuant to 42 U.S.C. § 1983. Plaintiffs agree that the "only Constitutional right available to [p]laintiffs is found in the [Fourteenth] Amendment," but suggest there is a First Amendment interest also.[18]

"It is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that '[t]he state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. §]

---

[14] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[15] Id. at 325.

[16] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

[17] Id. at 255; Soldano v. United States, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

[18] Doc. 54 at 10. While plaintiffs' first amended complaint alleges that this court has jurisdiction over plaintiffs' federal claims pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, plaintiffs did not contest defendants' assertion that the only federal claims for relief available to plaintiffs are those under 42 U.S.C. § 1983, with the exclusion of a possible claim for attorney's fees under 42 U.S.C. § 1988. Accordingly, the court will dismiss plaintiffs' claims under 42 U.S.C. §§1985 and 1986.

Exhibit __A__
Page __5__ of __12__