# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | | |
|---|---|---|
| ARTHUR J. PORTER and CHRISTIE L. PORTER, | ) ) ) | |
| Plaintiffs, | ) ) | 3:05-cv-00142-JWS |
| vs. | ) ) | ORDER AND OPINION |
| | ) ) | [Re: Motions at Dockets 113, 114 |
| ARTHUR J. OSBORN, | ) ) | 115, 140, and 144] |
| Defendant. | ) ) ) | |

## I. MOTIONS PRESENTED

At docket 113, defendant Arthur J. Osborn ("Osborn"), a retired Alaska State Trooper, moves to preclude plaintiffs Arthur and Christie Porter (the "Porters" or "plaintiffs") from introducing evidence of Osborn's character relating to (1) prior use of force or acts of violence, and (2) bias against disabled persons. The Porters oppose the motion at docket 125. Osborn replies at docket 135.

At docket 114, Osborn moves for summary judgment. At docket 126, the Porters oppose the motion and request relief pursuant to Federal Rule of Civil Procedure 56(f). Osborn replies at docket 130.

At docket 115, Osborn moves to establish Osborn's community care-taker function and to preclude the Porters from recovering damages based on alleged Fourth Amendment violations. At docket 124, the Porters oppose the motion. Osborn replies at docket 131.

At docket 140, the Porters move to preclude Osborn from introducing evidence of Casey Porter's ("Casey") drug abuse by means of post-mortem toxicology reports. Osborn opposes the motion at docket 143. The Porters reply at docket 146.

At docket 144, counsel for the Porters move unopposed for a trial setting conference "in late April or thereafter" to permit him to recover from illness. As noted, Osborn does not oppose this motion.

Oral argument was not requested on any of the motions, and would not assist the court.

## II. BACKGROUND

The background of this matter has been recited in this court's order at docket 63 and in the court of appeals' opinion at docket 85.[1] Generally, this matter arises out of the death of Casey, the Porters' adult son, during a confrontation by Osborn. Of the myriad claims brought by the Porters, the only remaining claim seeks damages based on their fundamental liberty interest in Casey's society under the Fourteenth Amendment. The court of appeals reversed this court's denial of Osborn's earlier summary judgment motion on the issue of qualified immunity, and held that the "purpose to harm" standard, not the "deliberate indifference" standard, "governs the applicable level of culpability needed to shock the conscience here, because Osborn faced a fast paced, evolving situation presenting competing obligations with insufficient time for the kind of actual deliberation required for deliberate indifference."[2] In his renewed motion for summary judgment, Osborn cites to the version of events described by the court of appeals, which were described by that court as "contested and ambiguous."[3] Osborn also attaches some excerpted testimony, incident transcriptions, and an expert report to his motion. Osborn argues that he could not have had a "purpose to harm" Casey because (1) it is undisputed that he did not know Casey and,

---

[1] *See also Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008).

[2] *Id.* at 1142.

[3] *Id.* at 1133.

Case 3:05-cv-00142-JWS   Document 147   Filed 12/17/09   Page 2 of 15

therefore, could not have borne any ill will toward him; (2) it is undisputed that Osborn shot Casey for the purpose of protecting Trooper Joseph Whittom; and (3) expert testimony indicates that Osborn perceived an immediate deadly threat to Whittom.[4] Osborn claims that the Porters' claim relies on "speculation, name-calling, character evidence, and Fourth Amendment arguments that are not before the court and that they lack standing to raise."[5]

In opposition, the Porters note that the court of appeals specifically instructed this court to consider on remand:

> whether under the totality of the circumstances a jury could infer that Osborn was acting for purposes other than legitimate law enforcement. First is the nature of the suspicious car and driver Osborn found in the pull-out near the Sterling Highway. The lone car was stationary and posed no overt threat to officer safety at the outset. Once Casey started moving the car, he created at least a minimal threat to safety, although hardly on the level of a car chase. Trooper Whittom reported that he did not feel threatened by Casey's car, but he and Osborn nevertheless drew their guns. Second is the nature of the back and forth between Casey and the troopers. In response to Casey's rolling his window down and refusing to exit the vehicle, Osborn precipitously sprayed him with pepper spray, an action that could be viewed as punishing or harassing when it is unclear whether Casey even knew he was dealing with law enforcement. Whittom's testimony suggests Casey's attempt to drive away may have been a normal effort to escape further spraying, making Osborn an active participant in triggering Casey's flight. Third and most important is Osborn's severe and sudden escalation of the situation: where Casey's only violation was non-compliance, Osborn's extraordinary response was to fire five shots, which shocked even Whittom.[6]

Furthermore, the court of appeals found that "[t]here are other facts suggested by the record that may also bear on Osborn's intent, but they are not clearly developed. For instance, it is not clear whether Osborn was in compliance with Alaska State Trooper regulations governing the use of force, or whether expert testimony might show that

---

[4]Docket 114 at 5-7.

[5]*Id.* at 7-8.

[6]Docket 126 at 3 (quoting *Porter*, 546 F.3d at 1141-42).

-3-

Casey was driving slowly away from Whittom at the time he was shot."[7] The Porters also contend that they are entitled to Rule 56(f) relief because the deposition of their expert, Ed Mott, has not yet been taken. Osborn concedes that Rule 56(f) relief would be appropriate, but nevertheless argues that the Porters have failed to demonstrate that facts exist that would allow a finding of an improper "purpose to harm."[8] Because the discovery deadline has passed, and neither party has moved for an extension of time to complete discovery, the court assumes that the deposition of Mr. Mott has concluded.

Concurrent with his motion for summary judgment, Osborn filed two motions *in limine.* First, Osborn moves, pursuant to Federal Rules of Evidence 401, 402, and 404(a). to preclude the Porters from introducing testimony, evidence, and argument regarding prior instances of Osborn's use of force in the line of duty; (2) testimony, evidence, and argument regarding Osborn's alleged use of force in his personal life; and (3) testimony, evidence, and argument that Osborn harbors a bias against disabled persons.[9] Specifically, Osborn argues that evidence of prior acts of force or violence must be excluded as irrelevant under Rule 404(a) and for the additional reason that such evidence irrelevant to the scope of the remand order, which limits this court's inquiry to "whether under the totality of the circumstances a jury could infer that Osborn was acting for purposes other than legitimate law enforcement."[10] Moreover, Osborn argues that the introduction of such evidence would be unfairly prejudicial pursuant to Rule 403. The Porters counter that such evidence may be introduced to show Osborn's "habit" or "routine practice" - that is, "one's regular response to a routine situation."[11]

Second, Osborn moves to establish Osborn's care-taking function as legitimate, and to exclude evidence and argument about Osborn's Fourth Amendment authority to

---

[7] *Porter*, 546 F.3d at 1142.

[8] Docket 130 at 2.

[9] Docket 113 at 1.

[10] *Porter*, 546 F.3d at 1141.

[11] Docket 126 (citing Fed. R. Evid. 406, Advisory Committee Notes to 1972 Proposed Rules).

Case 3:05-cv-00142-JWS   Document 147   Filed 12/17/09   Page 4 of 15

detain Casey and/or instruct him to exit his vehicle.[12]  In the event the court permits the Porters to offer evidence or argument regarding the Fourth Amendment constitutionality of Osborn's actions, Osborn requests that the court rule as a matter of law that Osborn had reasonable suspicion to detain Casey.[13]  The Porters counter that Osborn lacked any reasonable suspicion to detain Casey, and that he acted beyond his function as a community caretaker.[14]  Moreover, the Porters claim that community care-taking cases are highly contextual, and that the Ninth Circuit's remand specifically indicates that this court is to consider Osborn's "role in creating the emergency that led to his fatally shooting Casey."[15]  Whether Osborn's conduct was reasonable, the Porters continue, is a question of fact to be determined by looking to both his authority to approach Casey, as well as his reaction upon confronting Casey.[16]

      Finally, the Porters recently filed a motion *in limine* to preclude use of post-mortem toxicology reports to establish that Casey was intoxicated at the time of the shooting.  The Porters argue that evidence of Casey's drug use on the evening he was killed is more prejudicial than probative under Rule 403, and that Rule 404(b) would preclude use of such character evidence to establish that Casey's drug use and subsequent actions provided Osborn with just cause for the shooting.[17]  Osborn counters that the Porters' motion should be denied on the ground that it was untimely filed.[18]  In the alternative, Osborn claims that the toxicology evidence is more probative than prejudicial, and directly rebuts the Porters' claims that Casey was engaged in no

---

[12]Docket 115 at 1-2.

[13]*Id.* at 2.

[14]*See generally* Docket 124.

[15]Docket 124 at 3 (quoting *Porter*, 546 F.3d at 1137).

[16]*Id.* at 11-12.

[17]Docket 141 at 3-4.

[18]Docket 143 at 2.

unlawful behavior and that Osborn had no reasonable suspicion to detain him.[19] Osborn also argues that Casey's drug use on the day of the incident may be introduced under the motive exception to Rule 404(b), because it tends to establish Casey's motive to avoid detection by law enforcement, as well as his motive to flee the scene.[20]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[21] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[22] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[23] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[24]

Rule 404(a) provides generally that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Similarly, Rule 404(b) dictates that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may "be admissible for

---

[19]*Id.* at 4-9; 11-12.

[20]*Id.* at 9-11.

[21]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[22]*Id.* at 325.

[23]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[24]*Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

-6-

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[25] The Ninth Circuit has held that "[c]haracter evidence is normally not admissible in a civil rights case."[26] Closely related to character evidence is evidence of the habit of a person, which "is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit."[27] Habit "describes one's regular response to a repeated specific situation" and encompasses a "person's regular practice of meeting a particular kind of situation with a specific type of conduct."[28]

## IV. DISCUSSION

### A. Motions *in Limine*

#### 1. Motion at Docket 113

The question raised by Osborn's first motion is whether the Porters may introduce evidence of Osborn's prior history of violence or bias against disabled persons. Osborn references "a variety of anecdotes about his past,"[29] and specifically seeks to preclude testimony by his ex-wife regarding "problems in their marriage," as well as testimony about instances in which Osborn purportedly "spoke harshly" to a suspect and forced a suspect to "kneel on the ground despite having hip problems."[30] It is also suggested that the Porters will seek to introduce a February 2003 article printed in Anchorage Daily News ("AND") entitled "Trooper known for history of aggression," which paints Osborn as a reactionary officer whose liberal use of pepper spray and violence against those attempting to challenge his authority is renown throughout

---

[25]Fed. R. Evid. 404(b).

[26]*Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993).

[27]Fed. R. Evid. 406.

[28]*Id.*, Advisory Committee Notes to 1972 Proposed Rules.

[29]Docket 113 at 4.

[30]Docket 113 at 6.

-7-

Alaska.[31]  A newspaper article is, of course, hearsay, and the request to exclude the article itself will be granted.  However, the Porters have also indicated that they intend to elicit testimony at trial from some of the individuals interviewed for this article.[32]

With respect to particular testimony, such as that from the source or people mentioned in the article, the court concludes that it can make no ruling at this time on admissibility due to the absence of a specificity as to what the testimony would be.  Certainly, evidence of prior acts of violence that are of the same or similar nature to the incident in question might be admissible to show Osborn's intent as to the claim alleged, given that the question on remand is whether Osborn had a "purpose to harm" Casey, which Osborn denies.[33]  The Ninth Circuit applies the following test to determine whether evidence should be admitted under Rule 404(b): "(1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged."[34]  Because neither party has briefed any of these elements, the court cannot rule on the admissibility of Osborn's prior acts of violence at this time.  The court is perfectly capable of addressing each item of evidence under the above framework and Rule 403 on an ad hoc basis during a trial on the merits, if necessary.  It may be added that the court does not believe any of the evidence which might be available could come in on a theory that Osborn's action on the evening in question was part of a "habit."  The analysis will have to proceed under Rule 404(b).

There is one exception to the discussion above.  It relates to Osborn's argument that the court should exclude evidence of his bias against the disabled Osborn

---

[31]Docket 125, Exhibit A.

[32]Docket 96.

[33] *See Gates*, 993 F.2d at 700 (suggesting that, where intent is at issue, past conduct may be relevant); *see also Heath v. Cast*, 813 F.2d 254, 255 (9th Cir. 1987) ("Rule 404(b) is one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial.")

[34]*U.S. v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991) (citing *U.S. v. Spillone*, 879 F.2d 514, 518-520 (9th Cir. 1989)

-8-

references a prior interaction he had with a wheelchair-bound individual.  The court assumes for purposes of this motion that the individual to whom Osborn is referring is Charles "Chuck" Maier, who was interviewed for the noted ADN article and is listed on the Porters' witness list.[35]  Because the undisputed evidence shows that Osborn had never met Casey and did not know that Casey was disabled prior to the shooting, Osborn could not have acted on any preexisting bias against the disabled.  The Porters are therefore precluded from offering Mr. Maier or anyone else to testify for the purpose of establishing that Osborn harbored a prejudice against the disabled or making argument regarding the same.  Such testimony would be unfairly prejudicial and would have no probative value.

### 2. Motion at Docket 115

Osborn's next motion seeks to establish that he had the legal authority to detain Casey based on his function as a community caretaker and, at the same time, preclude the Porters from challenging the legitimacy of Osborn's detention of Casey under the Fourth Amendment.  Osborn contends that when he responded to the Department of Transportation's ("DOT") report, he was exercising his community care-taking function, which does not require any suspicion of criminal conduct.  The Porters counter that, in the Ninth Circuit, the community care-taking doctrine has only been established in the context of vehicle impoundment, citing a recent opinion of the Ninth Circuit, *Miranda v. City of Cornelius*.  Indeed, in an even more recent opinion, *Ramirez v. City of Buena*, the Ninth Circuit reaffirmed the long-standing rule that impounding a car for "'safekeeping' [i]s reasonable under the community caretaking doctrine."[36]

As these cases make clear, the reasonableness of an impoundment under the community care-taking function does not depend on whether the officer had probable cause to believe there was a traffic violation, but on whether the impoundment fits within

---

[35]Docket 96 at 2.

[36]560 F.3d 1012, 1025 (9th Cir. 2009) (citing *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477 n.4 (9th Cir. 1993) and *U.S. v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005)); *see also South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976) and *Miranda v. City of Cornelius*, 429 F.2d 858, 864 (9th Cir. 2005).

the 'authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience . . . .'"[37] Although the Ninth Circuit has not applied this rule to an analogous case, the court has noted that a law enforcement officer is a "jack-of-all-emergencies" and, as part of his community caretaker function, is "'expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing, and provide an infinite variety of services to preserve and protect community safety.'"[38] Indeed, Alaska courts have recognized that an officer may exercise a community care-taking function when he activates emergency lights in order to assist someone who is lost or may need help.[39]

According to Trooper Whittom, the DOT's report indicated that a blue sedan had been parked at the Kenai Keys pullout for several hours and, every time the DOT vehicle drove past the pullout, the driver of the sedan would flash his lights.[40] The Porters concede that this report would have been sufficient to warrant a "welfare check."[41] The court agrees. From the perspective of Osborn and Whittom, the individual in the vehicle may have needed assistance, and may have flashed his lights in order to secure such assistance from a passing driver. As the Alaska Court of Appeals has held, "[w]hen a police officer observes facts and circumstances which he actually and reasonably concludes to be a request for contact or assistance, the officer is justified in making that contact."[42] Thus, this court concludes that Osborn properly exercised his community care-taking function when he approached Casey's vehicle.

Osborn's argument that the Porters lack standing to vindicate Casey's Fourth Amendment rights is well taken. "'Fourth Amendment rights are personal rights which

---

[37]*Miranda*, 429 F.2d at 864 (quoting *Opperman*, 428 U.S. at 369).

[38]*U.S. v. Erickson*, 991 F.2d 529, 531 (9th Cir. 1993) (quoting *U.S. v. Rodriguez-Morales*, 929 F.2d 780, 784-85 (1st Cir. 1991)).

[39]*Crauthers v. State*, 727 P.2d 9, 11 (Alaska Ct. App. 1986).

[40]Docket 46 at 52.

[41]Docket 124 at 6.

[42]*Crauthers*, 727 P.2d at 11.

. . . may not be vicariously asserted.' . . . Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights."[43] "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action."[44] "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action."[45] The Porters have not filed suit on Casey's behalf, and their claims are therefore limited to their Fourteenth Amendment rights as Casey's parents.[46] As a result, the Porters will not be entitled to recover any damages relating to Osborn's actions leading up to Casey's death. But, as mentioned above and recognized by Osborn, evidence of the events leading up to Casey's death will be admissible.[47] If a trial on the merits becomes necessary, the court will address Osborn's objections to the Porters' characterization of the investigation and detention of, as well as the use of pepper spray on, Casey on an ad hoc basis.[48] Suffice it to say that, for purposes of the pending summary judgment motion, discussed *infra*, the court is aware that the Porters' claim is for loss of society under the Fourteenth Amendment, and not for excessive force or illegal seizure under the Fourth Amendment.

---

[43]*Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998) (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)).

[44]*Moreland*, 159 F.3d at 369.

[45]*Id.*

[46]*Porter*, 546 F.3d at 1136.

[47]Docket 115 at 9-10.

[48]The court declines Osborn's request to find, as a matter of law, that Osborn had reasonable suspicion to detain Casey and ask him to exit the vehicle because it is unclear whether Osborn had grounds to suspect criminal activity.

Case 3:05-cv-00142-JWS   Document 147   Filed 12/17/09   Page 11 of 15

### 3. Motion at Docket 140

The Porters's motion seeks to preclude any argument or testimony regarding the results of a toxicology report taken from Casey after his death under Rules 404(b) and 403. As Osborn correctly notes, this motion was filed two months after the initial deadline for pre-trial motions, September 8, 2009.[49] However, the parties stipulated to a continuance of discovery on September 3, 2009, which extended the discovery deadline to October 30, 3009.[50] Although the parties did not reference the deadline for motions *in limine* in their stipulation, a continuance of the pre-trial motion deadline would logically follow from a continuance of the discovery deadline. Therefore, because the motion was filed within 30 days of the close of discovery, it is deemed timely.[51] It may be added that even if a motion were not timely filed, the issue would have to be addressed at trial upon the making of an objection. In any event, if the Porters intend to offer evidence of Casey's lawful intentions at trial, evidence of his drug use immediately before the incident could become relevant to an assessment of Casey's conduct at the time of the incident, which could inform a determination regarding Osborn's response to Casey's behavior. However, the court notes that this evidence would be highly prejudicial, and would be admissible only if Osborn could make a showing of high probative value. Nevertheless, the court declines to rule on the toxicology reports at this time, in large part because they have not been submitted in connection with the Porters' motion, and the court does not know what they would disclose.

### B. Motion for Summary Judgment at docket 114

As an initial matter, the Porters' request for Rule 56(f) relief is denied as moot because the deadline for discovery has passed. Thus, there is no reason to forego ruling on the merits of Osborn's renewed summary judgment motion. Osborn's motion is based on the alleged dearth of evidence "'that would justify a jury finding that Osborn

---

[49]Docket 90 at 4.

[50]Docket 109.

[51]LR 16.1(c)(8).

-12-

acted with an unconstitutional purpose to harm Casey.'"[52] The court of appeals indicated that a "purpose to harm" may be established by evidence of (1) an intention to "induce lawlessness, or to terrorize, cause harm, or kill";[53] (2) force being used against a suspect to "teach him a lesson" or to "get even";[54] or (3) an officer engaging in "particularly objectionable conduct."[55] Osborn contends that "there can be no reasonable inference that [he] intended to 'get even' with Casey Porter or 'teach him a lesson'" because "he did not even know the decedent's identity, [and] did not bear any ill will toward Casey Porter or have any negative personal feelings about him."[56] While that may be true, the question remains whether Osborn perhaps sought to "get even" or teach Casey a lesson for attempting to flee the scene, refusing to keep his hands on the steering wheel, or otherwise objecting to his detention. Law enforcement officers involved in an escalating situation are capable of experiencing a full range of human emotion, and it may reasonably be said that Osborn could have developed an improper "purpose to harm" of the sort mentioned above during the course of the incident. In short, Osborn's "purpose" when he fired into Casey's vehicle remains in dispute.

Osborn also claims that it is undisputed that his only motive in shooting Casey was a legitimate police purpose - protecting Whittom from harm. However, Whittom stated that he was in a state of "shock" and that he "couldn't believe that shots were fired in a situation like this."[57] Moreover, Whittom stated that, as Casey began to move his vehicle, his "tires were spinning" on the ice, and that the vehicle had rolled five feet,

---

[52]Docket 114 at 2 (quoting *Porter*, 546 F.3d at 1140).

[53]*Porter*, 546 F.3d at 1140 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 855 (1998)).

[54]*Porter*, 546 F.3d at 1140 (quoting *Davis v. Township of Hillside*, 190 F.3d 167, 172-73 (3d Cir. 1999) (McKee, J., concurring)).

[55]*Ibid.*

[56]Docket 114 at 5.

[57]Docket 46 at 53.

coming to a halt when it struck Whittom's vehicle, when Osborn fired into the vehicle.[58] The conclusion to be drawn is that Casey may not have been moving very quickly, and likely could not have effected his escape because Whittom's vehicle would have prevented any additional forward movement. Therefore, whether Osborn engaged in "particularly objectionable conduct" is open to varying interpretations. The jury is entitled to hear both Osborn's account of the incident, and Whittom's perception of Osborn's actions, between which, at present, a substantial disconnect exists. Although Osborn certainly justified his actions after the incident, law enforcement officers frequently engage in such post hoc reasoning in order to support their behavior. The question a jury would have to answer is whether Osborn's rationale evidences a legitimate law enforcement purpose or whether his conduct was "particularly objectionable" or based on some other illegitimate purpose.

**C. Motion at Docket 144**

Finally, the court grants the Porters' unopposed motion to schedule a trial setting conference after April 2010. The parties will appear for a trial setting conference on May 11, 2010 at 8:30 AM.

## V. CONCLUSION

For the foregoing reasons, the court rules as follows:

(1) Osborn's motion at docket 113 is **GRANTED** to the extent it seeks to exclude the newspaper article and to preclude argument and testimony regarding his alleged bias toward the disabled, but **DENIED** without prejudice in all other respects as discussed in the text above;

(2) Osborne's motion at docket 114 for summary judgment is **DENIED,** and the Porters' request for relief under Rule 56(f) at docket 126 is **DENIED** as moot.

(3) Osborn's motion at docket 115 is **GRANTED** to the extent it seeks to establish that Osborn's was performing a legitimate community care-taking function when he approached Casey and to the extent it seeks to preclude the Porters from

---

[58] *Id.*

-14-

recovering damages on a Fourth Amendment theory.  The motion is **DENIED** in all other respects as discussed in the text above.

      (4) The Porters' motion at docket 140 is **DENIED** without prejudice;

      (5) The Porters' motion at docket 144 is **GRANTED**.  The parties will appear for a trial setting conference on May 11, 2010 at 8:30 AM.  In the meantime, the parties are urged to work together with an eye to negotiating a settlement.

      DATED at Anchorage, Alaska, this 17th day of December 2009.

                                        /s/ JOHN W. SEDWICK
                                UNITED STATES DISTRICT JUDGE